No. 25,254.

L. Lawson, *Appellee*, v. H. Brokmann, *Appellant*.

SYLLABUS BY THE COURT.

1. Negligence—*Leaving Team Unhitched and Unattended—Negligence Question of Fact for Jury.* The leaving of a team on the highway untied and unattended for a short time is not under all circumstances negligence *per se,* but is a question for the jury to be considered in connection with all the surrounding circumstances.

2. Same—*Instruction—Burden of Proof of Negligence.* In the instant case an instruction by the court that negligence is not to be presumed, but the party asking damages for the fault of another has the burden of proving such negligence, is not erroneous.

3. Same—*Instruction as to Rule of Negligence.* Where the general rule of negligence is correctly stated in an instruction the failure of the court to elaborate or make it more definite as to some phases of the law of negligence, is not a ground of error where a request for such an instruction or modification of that given is not made by the complaining party.

4. Same—*Instruction—Measure of Damages—Mitigation of Damages.* An instruction relating to the measure of damages resulting from a wrongful attachment and the duty of the party wronged to do what he reasonably can to mitigate the damages, is held to be without prejudicial error.

Appeal from Douglas district court; HUGH MEANS, judge. Opinion filed May 10, 1924. Affirmed.

*F. B. Dodds,* and *J. B. Wilson,* both of Lawrence, for the appellant.

*George K. Melvin* and *R. E. Melvin,* both of Lawrence, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: In this proceeding L. Lawson sued H. Brokmann, setting up four distinct causes of action: a promissory note executed by defendant which plaintiff had signed as surety and been required to pay, another note of $32.50 given by defendant to plaintiff, an account for labor and feed furnished, valued at $28.07, and another for services and trips made by plaintiff with his automobile for the benefit of defendant amounting to $45. In his answer and cross-action defendant pleaded a general denial, a set-off for $30.37 for baling hay and straw for plaintiff and for a roll of baling wire, a claim of $2.60 for corn furnished plaintiff, a claim of damages in the amount of $203.50 for the loss of a mare killed in a runaway and for injury to harness resulting, it was alleged, through the negligence of the plaintiff, and a claim for $695 as damages for a wrongful attachment by plaintiff under which a hay baler of defendant was seized and held for a time, and he asked for the profits he might have earned by its use while it was so held.

On the trial of the case there was conflicting testimony as to the different items and claims involved, and the jury rendered a general verdict in favor of plaintiff awarding him $47.05. With the general verdict two special findings were made, one that no damages were sustained or allowed for the loss of the mare or the injury to the harness, and another that the defendant was entitled to and allowed $50 as damages resulting from the wrongful attachment of the hay baler. There were no other special questions submitted and there is no means of determining which or how much of the separate claims of the parties were allowed or disallowed by the jury, except as shown by the general verdict and the two special findings mentioned. The disputed claims not included in the special findings are not open to review on appeal.

There is a complaint of the instruction given relative to the claim for damages for the loss of the mare which ran away and the broken harness. It appears that some road work was being done in the vicinity of the homes of the parties, and that plaintiff and defendant were employed in that work. Each brought and used a team of horses and both teams were hitched to a single plow and in doing the plowing each party drove his own team. The road boss asked them to stop plowing and assist him in burning brush, grass and weeds near by. Each observed the request, threw the lines upon the

ground and neither tied his team nor took any precaution to prevent them from moving or running away. Within a few minutes after the parties left, the horses had started and were seen to run slowly down the road. They only ran a short distance when defendant's mare became tangled and was thrown to the ground and killed. What frightened or caused the teams to start and run away was not shown. There was testimony that plaintiff's team had run away at another time. Other testimony was that they were gentle. One witness who had known the team for sixteen years and had driven them, said that they did not scare at automobiles, and she had never seen anything to indicate that they would run away.

In a challenged instruction relating to the alleged negligence the court among other things told the jury that:

"Negligence is never presumed. The burden is strongly upon the person claiming negligence to establish it. The fact that there was a running away, if there was one, isn't in and of itself any evidence of negligence on the part of any person. Before the defendant can recover on this claim, he must establish to your satisfaction by a preponderance of the evidence that through some negligence on the part of the plaintiff in this case, his mare was killed. If it is something that just happened, just an accident, that wouldn't entitle him to recover, because as I suggested before, he would have to establish negligence on the part of the plaintiff."

Defendant insists that when a team runs away a presumption of negligence arises, and that the leaving of horses unhitched and unattended, is negligence *per se* which renders the owner liable for resulting injuries. Horses may become frightened and run away without any fault of the owner. There can be no liability of the owner unless there was negligence and such negligence was the proximate cause of the injury which resulted. There is a conflict of the authorities as to whether leaving horses untied and unattended is negligence *per se,* and it has been said that the weight of authority is that whether an owner or his driver is negligent in leaving horses unhitched and unguarded on a highway is a question for the jury to be considered with all the surrounding circumstances. (Note 10 L. R. A., n. s. 852.) That is in effect the rule that has been established in this state, and the trial court was justified from expressions used in *Moulton v. Aldrich,* 28 Kan. 300, in following the rule. It was there said:

"We do not hold that the leaving of a team of horses in a street, without being tied or held by the reins, is under all circumstances, as a matter of law, negligence *per se.* It is common for persons in a street doing business with▶

horses, to leave them standing in their immediate presence while attending to business, and it is not unlawful for them to do so, unless prohibited from so doing by ordinance, or the authorities of the city. It is commonly safe so to do, and where the horse is in charge of a careful driver, and is neither vicious nor unmanageable, accidents are rarely occasioned thereby." (p. 306.)

Here the four horses should be considered as constituting a single team, two of them belonging to the defendant and the others to the plaintiff, and both of them left the horses unhitched and unguarded. If the plaintiff was negligent in leaving his team in this way the defendant was likewise negligent. Probably both believed that there was no risk in leaving horses so old and gentle as these were. Again there was no proof as to what frightened the horses or what caused them to run away. There was no showing as to whether it was plaintiff's horses or defendant's which first broke away or started on the run, nothing to show the efficient and proximate cause of the runaway. The habits of the horses, a tendency to run away, if any existed, the cause of the fright, are all to be considered in connection with the leaving of the horses untied, and were questions for the jury. No error was committed by the court in the instruction that negligence is not presumed, but that the party asking a recovery for the fault or negligence of another has the burden of proving it. It may be said that the instruction was exceedingly liberal to the defendant, in that the jury was told that the defendant might recover if he established by a preponderance of the evidence that through *some negligence* of the plaintiff his mare was killed. This left out of consideration the negligence of the defendant which may have contributed to the result, and whether some negligence of the plaintiff in the matter was the real cause of the runaway and the injury.

Defendant also complains that the failure of the court to instruct on the question of contributory negligence was error, but it appears that he did not request an instruction on that subject, nor did he ask for a more elaborate instruction as to the elements constituting negligence. Contributory negligence was not pleaded or made an issue in the case and if either party desired such an instruction it was his duty to request it in order to avail himself of error in its omission.

The defendant insists further that there was error in the instruction as to the damages sustained through the wrongful attachment of the hay baler. The attachment was found to be wrongful and an allowance was made by the jury to the extent of $50

for the loss so occasioned. In regard to this loss the court instructed the jury:

"His measure of recovery, if you find that the plaintiff was malicious in his suing out of that writ, would be the reasonable value of the use of that baler between those dates. It would be the duty of the defendant during that time to minimize the damage as much as possible.

"There is some evidence before you in regard to alleged contracts that the defendant says he had with other persons with reference to the use of this baler. A contract is a positive agreement between two parties after there has been a meeting of the minds to do or not to do a certain thing. If Brokmann contracted with somebody to bale some straw or hay for him when he did not have the means to do it with, and knew that he couldn't get this baler for that purpose, he couldn't recover anything from the plaintiff by reason of that particular contract, but he could recover from him for the reasonable value of the use of that machine between the dates indicated. He is not allowed to speculate, and we are not allowed to speculate as to what he might have made if he had had a certain contract, or if he actually had the contract, we are not allowed to speculate and return any damages in your verdict what you might figure out that he would have made had he carried out that contract. I think the measure of recovery as I suggested before, is the reasonable value of the use of that machine between the dates indicated. I might say that in no event could the recovery for any damages of this machine be greater than the value of the machine itself."

The instruction was fairly applicable to the issue and facts in the case. Defendant insists he was entitled to the profits he might have made from the use of the baler in carrying out contracts he had or could have obtained had he not been deprived of the use of the baler. If he had contracts or could have procured them, it was within his power and duty to rent or procure a baler for that purpose, or perhaps he might have obtained the return of his own baler by the mere execution of his bond. He was not warranted in sitting idly by in order to enhance his demand for damages by profits he might have earned by the use of the baler. It was his duty to mitigate the damages in any practical and reasonable way that was available to him. It has been decided that:

"Where a party seeks redress for the wrong of another, the law requires that he shall do whatever he reasonably can and improve all reasonable opportunities to avoid the consequences and to lessen the injury." (*Town Co. v. Leonard,* 46 Kan. 354, syl. ¶ 2, 26 Pac. 717.)

The duty of the injured party is stated in another form in *Atkinson v. Kirkpatrick,* 90 Kan. 515, 519, 135 Pac. 579:

"It is a rule of the law of damages that notwithstanding the fault of the other party the one who was injured in person or property will not be per-

mitted to recover damages which might have been averted by reasonable diligence."

The defendant says that evidently the jury, instead of allowing the profits he might have made from baling, gave him only the rental value of the baler. This was in accordance with the instruction and is substantially within the rule for measuring damages. It was within the power of the defendant to procure a baler to carry on his business and complete any contracts which he had made or had in contemplation. The remark of the court that the defendant could not recover more than the value of the machine, might be objectionable in some cases in that it would not afford adequate compensation. If the machine procured to avert or mitigate the damages was an expense equal to its value, the injured party might suffer a loss and be entitled to recover for the time and expense of preparation, that is, any loss of time or any expense in renting or procuring another machine. The ordinary measure of damages in such a case is that the injured party is entitled to the reasonable expense of avoiding the consequence of the acts of the wrong-doer. Here no effort was made by the defendant to lessen the injury or avert the loss and such expense if it had been undertaken would have been only a trifle. Under the testimony the limitation of the recovery to the value of the machine is not regarded as substantial error.

The judgment of the district court is affirmed.