No. 29,458.

F. B. ALLISON, *Appellee,* v. LOUIS C. BORER, *Appellant.*

(293 Pac. 769.)

Opinion filed December 6, 1930.

John J. Riling and E. T. Riling, both of Lawrence, for the appellant.
C. A. Smart, of Lawrence, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This is an action for damages for wrongful attachment of personal property belonging to the plaintiff. The defendant filed a general denial and a cross petition alleging that the son of the plaintiff was the agent, servant and employee of the plaintiff and that the son, acting in such capacity in the building of an oil station in Lawrence, borrowed from the defendant for and on behalf of his father, the plaintiff, the sum of $900 to finish the erection and equipment of such station; that when the loan was made the son represented that he and one John Folck were the owners of the station, and that defendant was not aware that the plaintiff owned it when he brought his attachment suit against the son; that the plaintiff has ratified the acts of his son in borrowing the money and has received the benefits and has acknowledged the indebtedness, and is estopped to deny the agency and his authority to make the loan, and the cross petition closed with a prayer for a judgment for $900 with interest. The reply to the cross petition was a verified general denial and specific denial of agency or authority to borrow money for or on behalf of plaintiff, and further plead res adjudicata referring to the pleadings and judgment in the attachment suit. The court sustained a demurrer to the evidence of the defendant in support of his cross petition, and the jury returned a verdict for plaintiff for $428. Judgment was accordingly rendered for the plaintiff, and defendant appeals.

The appellant assigns as an error the overruling of his motion to make the petition more definite and certain as to the amounts claimed for attorney fees, time lost, traveling expenses and expenses of witnesses. No record appears to have been made of this motion except the filing thereof, which was prior to the filing of the answer and cross petition. The petition did not designate any separate

amounts for these separate items of expense, but named as a total amount for all of them and loss of rent and use of the property while under the attachment order the sum of $800.

Assuming that this motion was brought to the attention of the court and was overruled, was it error? The ruling on a motion of this kind is ordinarily a matter of discretion and would not be a ground for reversal unless there was a distinct abuse of discretion. The statute itself only makes a motion of this character appropriate and a proper proceeding "when the allegations of a pleading are so indefinite and uncertain that the nature of the charge or defense is not apparent." (R. S. 60-741.) We think the defendant by this pleading was fairly well apprised of the general nature and extent of the claim.

"The allowance or denial of a motion to make a petition more definite and certain . . . is ordinarily within the sound discretion of the trial court." (*Cribb v. Hudson,* 99 Kan. 65, syl. ¶ 1, 160 Pac. 1019.)

"The motion to make definite and certain lies only when the pleading attacked is so indefinite and uncertain that the nature of the charge or defense is not apparent. (Civ. code, § 122.) This does not mean indefinite and uncertain according to the refinements and technicalities of the common-law system of pleading, and a pleading is sufficient as against the motion which fairly apprises the adversary of what the claim or defense is." (*Republic County v. Guaranty Co.,* 96 Kan. 255, syl. ¶ 1, 150 Pac. 590.)

Appellant contends that it was error for the court to overrule his objection to the introduction of evidence by the plaintiff and his demurrer to plaintiff's evidence for the reason that plaintiff, when he filed his plea of intervention in the attachment suit, "knew then the full amount of any damages that he had sustained by reason of this attachment," and should have asked for his damages at that time and in that action, citing *Bank v. Coerber,* 113 Kan. 498, 215 Pac. 285, and *Lawson v. Brokmann,* 116 Kan. 102, 226 Pac. 252, in support of such practice. The decision in the former case cited does not by any means approve the practice of filing as a set-off a cross petition for damages for wrongful attachment in the attachment action itself. In fact, it states it cannot be done except by way of supplemental answer filed by leave of the court. That was in a case where the defense plead was an oral extension of the note beyond the time when the action was commenced, and the supplemental answer was mentioned in connection with the apparent necessity of a supplemental petition. The second case cited was where the

loss of profits from the use of a hay baler which was attached amounted to more than the value of the baler, and the decision was that the owner could not sit idly by and expect to reap profits in the damage suit when he might have mitigated them by renting or procuring another baler and continuing his work. The plaintiff here was an intervener in the attachment suit and his answer necessarily referred to the time the attachment suit was commenced. He could not know when he intervened that he would recover his property nor the expense in endeavoring to do so, neither was there any occasion in the attachment suit for filing supplemental pleadings, nor any opportunity to mitigate damages.

The next errors alleged are in sustaining objections to questions asked and evidence offered to prove agency, ratification and use of the money borrowed by the son, and in sustaining the demurrer to defendant's evidence in support of his cross petition. Many of the objections sustained by the court were upon the generally accepted theory that when agency is denied under oath it should be established before proving any of the statements or acts of the agent. Later in the trial the court relaxed the rule as to the order of proof, but at the close of the testimony by defendant sustained the demurrer to his evidence in support of his cross petition.

The witness Folck testified to having had a conversation with the plaintiff and his son when the project of building an oil station was considered. He testified that plaintiff had $9,000 he could furnish for that purpose and that it would be sent to his son. Witness and the son formed a partnership and supervised the construction of the oil station. As far as he knew, plaintiff paid the bill for construction; the son paid the contractor by check.

The contractor testified that he was employed to construct the oil station by the son and was paid by him by check on some bank in Lawrence; that the only ones from whom he took any instructions were the son and Folck.

The defendant testified he had been a partner in business with the son; that he knew the plaintiff; that he did not know plaintiff was the owner of the oil station when he brought his attachment suit against the son; that he knew that the son contracted for its erection and operated it; that he had a talk with the plaintiff on the street and said he wanted to see his son about that note and "Mr. Allison said they would be out to settle it," meaning the note at the bank for $1,100 which included his claim of $900, the note

being signed by the son and defendant; that he received a letter from the son offering to give his father as security on a note if an extension of two years' time for payment would be granted; that the plaintiff told him he had authorized the son to write the letter.

Officers of the Merchants National Bank testified as to asking plaintiff about the payment of his son's note and that he answered, "I am not on that note and am not assuming legal liability, but I will see that the note is paid." Another bank officer said the plaintiff told him, in speaking of the note, he would see it was paid.

The burden of proof under the pleadings was on the appellant to establish both agency and ratification and at least one or the other was necessary to the success of the cross petition. The evidence accepted and received on the trial of which the above is a general summary fails to establish either agency or ratification.

As to the evidence excluded, an examination of the abstract shows that most of the questions of the appellant to which objections were sustained by the court concerned what the son said to the witnesses about borrowing the money to complete the oil station, about the son's credit at the bank where the money was borrowed, about the borrowed money being checked out and about who directed the contractor in the construction of the oil station. Doubtless the favorable answers expected would have tended to show that the borrowing was by the son for the father, that the borrowed money went into the construction of the oil station and that the son gave instructions to the contractor about the construction work. Were questions along these general lines competent to establish either agency or ratification?

Acts and declarations of agents are inadmissible to prove agency. (*Richards v. Newstifter*, 70 Kan. 350, 78 Pac. 824; *Bank v. Frost*, 70 Kan. 480, 78 Pac. 825; *Motor Sales Co. v. Brown*, 115 Kan. 344, 223 Pac. 309.) Neither can ratification be established without a showing of knowledge, actual or implied, on the part of the appellee as was held in *National Bank v. Drake*, 29 Kan. 311, as follows:

"Ratification implies knowledge, and a party cannot be adjudged to have ratified an act of which he has no knowledge, actual or constructive." (Syl. ¶ 4.)

"Ratification will be implied where the principal pays the notes of his agent or otherwise deals with them as his own.

"The acceptance and retention of the proceeds of a loan or of the benefits thereof, although made without authority, amount to an implied ratification of the loan, as where the principal appropriates and uses or disposes of the

property in which the proceeds of such loan were invested, but not where his acceptance was without knowledge of the circumstances, or where he had a right to accept the benefits without ratifying or repudiating the loan." (2 C. J. 499.)

"As a general rule, in order that a ratification of an unauthorized act or transaction of an agent may be valid and binding, it is essential that the principal have full knowledge, at the time of the ratification, of all material facts and circumstances relative to the unauthorized act or transaction, or that some one authorized to represent the principal, except the agent, have such knowledge, unless the principal is willfully ignorant or purposely refrains from seeking information." (2 C. J. 476.)

See, also, *Stout v. McLachlin*, 38 Kan. 120, 15 Pac. 902; *Telephone Co. v. Cory*, 117 Kan. 463, 232 Pac. 609.

Appellant cites cases of *Aultman v. Knoll*, 71 Kan. 109, 79 Pac. 1074; *Thresher Co. v. Zimmerman*, 109 Kan. 159, 197 Pac. 1111; *Petroleum Co. v. Gas & Fuel Co.*, 112 Kan. 73, 209 Pac. 826, and many others in which the decisions follow that in the Knoll case, *supra*, on the question of ratification where the principal accepted and retained the benefits of the unauthorized transaction, namely, the note and indorsement thereon procured by the agent through a promise to render some service to the indorser. The suit was upon the note procured in this questionable manner. Of course, the holder of the note should not recover on it and be permitted to totally disregard the unauthorized promise made to obtain it.

In the Zimmerman case, *supra*, suit was upon notes which the agent, without authority, had compromised by accepting $400 in cash and agreeing to return them and accept the thresher in full settlement. This compromise was set up in the answer, and at the time of the trial, fifteen months later, the plaintiff was held to have ratified the compromise by negligently failing to disavow the unauthorized settlement.

In the petroleum company case, *supra*, the suit was for the value of well casing sold by an agent only authorized to receive bids, but after an investigation by the company, which revealed the fact that the agent had collected in full for the pipe, it agreed to give the agent until July 15 to pay the amount, and after his failure brought attachment suit against him and also a criminal action, and in the meantime had communicated some of these circumstances to the purchasers. This looking to the agent and attempting to collect from him was held to be a ratification of his unauthorized collection from the purchasers.

In the case at bar the knowledge of borrowing to complete the station, or of the borrowed money going into the station, was not brought home to the plaintiff, nor could it even be impliedly imputed to him. Even the qualified promise to the bankers to see that the note would be paid was connected with a statement of nonliability and was in no way directly or indirectly associated with the oil-station enterprise. Without any such connection these statements and the one on the street to the defendant more nearly imply the relation of father and son than that of principal and agent or the ratification of an unauthorized act.

Appellant cites the case of *Watson et al. v. Bigelow et al.*, 47 Mo. 413, where a salesman for a New York shoe house borrowed money and invested most of it in the purchase of a horse, buggy and harness for his use as a salesman and concealed the matter from his employers, but later was asked to resign, and the house took over the horse, buggy and harness. There was no contention as to the borrowed money being so specifically invested, and by taking over that property the house was properly held liable.

Another case cited by appellant is *Calnan Construction Co. v. Brown*, 110 Ia. 37, where a father engaged his son to construct a dwelling house for him, placing in the hands of the son certain resources to cover the expenses. The property cost more than was anticipated and the son, then as agent for the father, borrowed the money to complete it. There was no dispute as to the amount borrowed or as to its being used for that purpose. The father claimed the son should alone be liable to pay it out of the resources given him for that purpose. It was an equity action, and the court held the estate of the father, who died pending trial, to be liable and gave a lien on the land and building.

We have referred to some of these cases cited more at length than usual to show the distinction between the facts and matters involved in them and the one at bar.

We think there was no error in sustaining the objections to the several questions asked by the appellant, and that the demurrer to the evidence of the defendant on his cross petition was properly sustained.

The judgment is affirmed.