J. MYRON OLSON, APPELLANT AND CROSS-APPELLEE, v. LOUIS PEDERSEN ET AL., APPELLEES AND CROSS-APPELLANTS.
231 N. W. 2d 310

Filed June 19, 1975. No. 39859.

Gleysteen, Harper, Kunze, Eidemoe and Heidman, for appellant.

Smith, Smith & Boyd, for appellees.

Heard before SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

CLINTON, J.

This multifaceted action arises out of a gravel mining lease between the defendant landowners, Pedersens, as lessors, and the plaintiff, J. Myron Olson, as lessee.

The nature of the case and the issues involved make it desirable to first set forth some background facts. In 1967 the parties made their first lease agreement. It provided for payment of a 20 cents per yard royalty with a minimum payment of $500 per year and contained provisions relating to the disposal of the overburden. Approximately 35,000 cubic yards of gravel were mined and sold under that lease. In the first part of April 1971, Pedersens, who had kept records of the gravel sold, brought suit against Olson for allegedly unpaid

royalty. This suit was dismissed by the Pedersens without payment of any sums by Olson and the parties resolved their differences by entering into a new and more elaborate lease on April 29, 1971. The present action grows out of that lease. At the time the new lease was entered into, in addition to the gravel which had been sold, there had been mined and stockpiled on the premises approximately 11,000 cubic yards of gravel. There was at that time, also, a substantial amount of overburden piled upon what was formerly level ground referred to in the record as the first orchard level.

The lease of April 29, 1971, was for a 5-year term. It provided for payment to the Pedersens of "twenty cents ($.20) for each cubic yard of limestone, sand, rock or gravel removed from said premises to be marketed or for lessee's own use, including approximately 10,000 cubic yards already mined and stockpiled on said premises." The lease provided that the royalty was to be paid within 10 days after the end of each 30-day period. It also provided: "In no event shall the payments herein specified be less than five hundred dollars ($500.00) in any 12 month period beginning with the execution of this lease." The provision with reference to disposal of overburden was as follows: "LESSEE AGREES to level all dirt, waste material and refuse from said operation to a height not to exceed the first level west of the orchard. The dirt now piled on the first level west and south of the orchard shall be pushed westward into a hole, into the area now occupied by the stockpile or in any area agreed upon around the farm buildings designated by lessors for their use and benefit. In no event shall any material of any type be pushed any further east of its present location except into the hole now existing or the stockpile area, nor shall the same be pushed over or upon any existing structure or fence. It is understood that the original first level was 50 feet wide on the average before gravel operations commenced, and lessee has no obligation to remove or level any dirt which is

more than 50 feet west of first level. All material shall be pushed in a westerly direction if practical. The parties shall agree on a new site for any future stockpiles of gravel. The present pile of dirt now on the first level west of the orchard shall be removed or leveled as herein provided within two years from date of execution of this lease. Lessee agrees to construct adequate dikes around the excavating site to prevent erosion and excess water drainage onto surrounding areas, especially toward lessor's house and other farm buildings."

No mining was done during the first year of this lease. Before the end of the first year Olson made a check for the minimum $500 yearly royalty payable to the Pedersens and to John Hancock Insurance Company, holder of a mortgage on the Pedersen land, to whom the royalties had been assigned, and sent this check to Pedersens' attorney. This check was never negotiated. Not only was no mining done under the lease, but none of the stockpile was sold. Timely tenders of the minimum annual royalty for 1973 and 1974 were made and refused.

On July 26, 1972, Pedersens sent Olson a "Notice to Terminate Lease," which recited as grounds for termination, the following:

"(1)  Nonpayment of rent by Lessee;

(2)  Failure by Lessee to construct one cattle and hog crossing which was sufficient to restrict cattle and hogs from crossing the same.

(3)  Failure by Lessee to level all dirt, waste material and refuse from said gravel operation to a height not to exceed the first level west of the orchard.

(4)  Failure of Lessee to construct adequate dikes around the excavating site to prevent erosion and excess water drainage on surrounding areas.

(5)  Failure by Lessee to stock pile gravel on premises leased.

(6)  Stock piling gravel on premises not agreed to by Lessors,"

and then demanded delivery and possession of the premises within 15 days of the receipt of the notice.

About 30 days after the receipt of the notice, Olson commenced this action and alleged three causes. The first was for a declaratory judgment, praying that the rights of the parties be determined. This cause was much later amended to allege that the Pedersens' actions were such a material breach of the lease as to excuse further performance by Olson. The second cause was for an injunction to prevent termination of the lease and to restrain Pedersens from interfering with Olson's use and enjoyment of the leasehold estate. The third cause claimed damages allegedly resulting to Olson by publicity arising out of the earlier litigation and also asked for damages from Pedersens for their having prevented Olson from disposing of the stockpiled gravel. The third cause was also later amended to allege that Pedersens had breached the lease by, among other things, serving the notice to terminate. It also asked damages for the loss of use of certain equipment on the premises used in the mining operation, namely a D9 dozer, a link-belt crane, a conveyor, and two trucks, which items Pedersens allegedly prevented Olson from removing.

Pedersens answered, admitting certain allegations and denying others, alleged nonpayment of rent due April 29, 1972, and asked damages for failure to level the dirt and waste and for failure to build the dike, and also prayed for certain consequential damages.

The trial court found that both parties had breached the lease and that it was terminated; and that Olson breached the lease by failing to build the dike and permitting waste and erosion. It awarded Olson $10,000 damages for loss of use of his equipment, and it allowed Pedersens $10,000 damages from Olson for the latter's failure to level, fill, and build dikes. It awarded Pedersens $1,000 for rent payments, and Olson $344.10 for gravel sold by Pedersens from the stockpile and not paid

for by them. It ordered that the stockpile of gravel be sold within 18 months and authorized injunctive relief to bring this about. Its order terminated the lease as of April 29, 1974, the third anniversary date thereof.

Olson appeals. Pedersens cross-appeal. Olson here, by proper assignment, urges: (1) The court erred in ruling that the lease had been terminated. In the alternative Olson asserts that the purported termination by Pedersens excused further performance on his part. (2) The award of $10,000 damages to Pedersens was erroneous and not supported by the evidence and the only breaches of the lease by Olson, if any, were excused by reason of Pedersens' refusal to perform. (3) The court erred in refusing to award Olson damages for gravel sales frustrated by Pedersens. By proper assignment on cross-appeal, Pedersens urge: (1) The court erred in finding that Pedersens breached the lease by refusing Olson access to the premises. (2) The evidence is insufficient to support the award of the judgment of $10,000 in damages for wrongful detention by Pedersens of Olson's equipment. We affirm in part, reverse in part, and remand with directions.

The proper answer to the riddles presented by this litigation may, we perceive, be best reached by answering the following questions: (1) Did Olson's failure to construct the dike justify the action of the Pedersens in attempting to terminate the lease? (2) If such action was not legally justified, and we find it was not, what effect did this have upon Olson's future obligations to perform his promises under the lease? (3) Were the various money judgments justified under the applicable rules of law and/or supported by the evidence? (4) Was the action of the trial court in directing the stockpile of gravel be sold within 18 months legally justified?

The following principles of law are applicable to the solution of the first question. Nonperformance of a covenant by one party to a lease, unless the performance is an express condition, does not excuse the other party

from performing further than the law of property governing evictions provides. Restatement, Contracts, § 290, p. 429; Hague v. Sterns, 175 Neb. 1, 120 N. W. 2d 287. In Nebraska the rule is that in the absence of a statute to the contrary a tenancy cannot be terminated for the breach of a covenant, condition, or collateral agreement by the lessee unless there is an express and distinct provision in the lease for a forfeiture or right of reentry on the occurrence of the breach. Forfeitures of estates under leases are not favored in law and the right to forfeit must be clearly stipulated. If a forfeiture has not been stipulated for, a covenant or condition which is merely implied, or an express one not clearly within the forfeiture clause, will not sustain a claim of forfeiture for breach. Hague v. Sterns, *supra*; Chesnut v. Master Laboratories, 148 Neb. 378, 27 N. W. 2d 541; 51C C. J. S., Landlord & Tenant, § 102 et seq., p. 330; 58 C. J. S., Mines and Minerals, § 173b, p. 369; Home Creek Smokeless Coal Co., Inc. v. Combs, 204 Va. 561, 132 S. E. 2d 399. In Wadman v. Boudreau, 270 Mass. 198, 170 N. E. 44, the Massachusetts court declined to declare forfeiture of a sand and gravel lease where overburden had been badly "sidecast" even though there was a forfeiture clause in the lease. The operation of the rules cited in the above Nebraska cases may be otherwise in the case of a mineral lease where the only consideration for the lease is the implied covenant to develop and operate. In such a case forfeiture may be declared. George v. Jones, 168 Neb. 149, 95 N. W. 2d 609, 76 A. L. R. 2d 710. The foundation for the foregoing rule appears to be grounded upon the general principle of contract law that, where a breach is so material and substantial as to defeat the objects of the parties in making the contract, forfeiture or rescission may be declared. 17A C. J. S., Contracts, § 422(1), p. 516. In the absence of a forfeiture clause, breach of a covenant is ordinarily not ground for forfeiture of a lease because an action for damages is an adequate

remedy. This principle would appear to be but an application of the rule applicable to contracts generally in cases where rescission is sought. Klapka v. Shrauger, 135 Neb. 354, 281 N. W. 612. Ordinarily forfeiture for breach of a condition subsequent may not be declared in the absence of a demand for performance. 51C C. J. S., Landlord & Tenant, § 114(2), p. 362.

Let us now in the light of the foregoing principles examine the evidence and the notice of termination. As implied by our statement of the questions, we need consider only one of the alleged breaches listed in the termination notice. This is because grounds (1) and (2), as the District Court properly held, find no support in the evidence. Ground (3), with reference to leveling and filling, is not applicable because, by the terms of the lease, Olson had a period of 2 years within which to carry out those obligations. The notice of termination was served before that time elapsed. Grounds (5) and (6) have no applicability because there were no provisions in the lease imposing such obligations. This leaves for consideration only the alleged failure to construct the dikes.

The time within which the dikes were to be constructed was not clearly specified. No demand was ever made for performance of that obligation previous to the serving of the notice to terminate. Olson argues that he understood he had 2 years within which to construct the dikes just as he had that amount of time to level and fill. The evidence would tend to support this interpretation of the contract because it would appear that the material from the pile of overburden would be utilized to construct the dikes and that this material would have, at least in part, to be moved to make way for the dike construction. But whether that construction of the contract is adopted or not, the application of the previously cited principles of law to the evidence make it clear that grounds for forfeiture and termination of the lease did not exist when the notice was served.

The exception to those general principles resting upon an implied obligation to continue to develop is eliminated because the lease provides for payment of a minimum annual royalty which was in fact paid or tendered.

Olson, in effect, argues that service of the notice to terminate by Pedersens was a total anticipatory breach of the lease, that now the passage of time has totally frustrated the purposes of the lease, and he should therefore be relieved of all obligations thereunder, including that of leveling, filling, and building dikes. In other words, he would now acquiesce in the wrongful termination rather than rely upon his prayer for declaratory and injunctive relief. He still seeks damages, however, for lost sales of gravel. At this point, we are confronted with a legal inconsistency. On the one hand Olson would acquiesce in Pedersens' termination and on the other seeks damages for Pedersens' breach. This he cannot do. "An indivisible contract cannot be rescinded in part and a part remain executed. If rescinded at all, it must be the entire contract, and the parties thereto placed in the situation they were at the time it was made as nearly as the circumstances will permit. . . . The remedies of rescission and damages are inconsistent; the former proceeding upon disaffirmance, and the latter upon affirmance of the contract. . . . Rescission extinguishes the contract and neither party can thereafter base any right of recovery on any part of it." James v. Hogan, 154 Neb. 306, 47 N. W. 2d 847. Where rescission is granted both parties must, as nearly as possible, be restored to the status quo. 17A C. J. S., Contracts, §§ 438, 439, p. 545. See, also, 17A C. J. S., Contracts, § 440, p. 551. Whether or not a breach has been so material as to require the injured party (in this case, Olson) to be relieved of all his obligations under the contract depends upon the circumstances. A. L. I., Restatement, Contracts 2d, Tentative Draft No. 8, March 20, 1973, C. 10, § 266, p. 67.

Under the circumstances of the case before us, the

parties cannot be restored to the status quo. This is primarily because the present lease was in effect a settlement of difficulties which the parties encountered in their dealings in the preceding lease and if we simply said that the present agreement is rescinded this would leave the express but imprecisely stated obligation of Olson to fill and level under the former lease wholly unfulfilled. See 17A C. J. S., Contracts, § 440, p. 551.

For the above reasons we find that the unjustified effort of the Pedersens to terminate the lease does not relieve Olson of his obligation to level, fill, and construct a dike or dikes in accordance with the contractual provisions.

This action being one for declaratory relief, we must now construe the contract to determine Olson's obligation under the provisions just mentioned. The contract provides: "The dirt now piled on the first level west and south of the orchard shall be pushed westward into a hole, into the area now occupied by the stockpile or in any area agreed upon around the farm buildings designated by lessors for their use and benefit. In no event shall any material of any type be pushed any further east of its present location except into the hole now existing or the stockpile area, nor shall the same be pushed over or upon any existing structure or fence. It is understood that the original first level was 50 feet wide on the average before gravel operations commenced, and lessee has no obligation to remove or level any dirt which is more than 50 feet west of first level. All material shall be pushed in a westerly direction if practical." The trial court awarded damages against Olson in the sum of $10,000 for breach of the foregoing provision as well as the provision to "construct adequate dikes." The evidence does not support a judgment for that amount. The witness who testified for Pedersens based his estimate of cost of leveling, filling, and construction, not upon the basis of Olson's obligations under the contract, but upon the cost of leveling, diking, and

terracing the entire excavation site. Under the express provisions of the contract, "lessee has no obligation to remove or level any dirt which is more than 50 feet west of first level." Since the judgment for $10,000 is unsupported by the evidence, it must be vacated. Olson testified that the cost of leveling, filling, and diking in accordance with the contract would be $3,996.20. This evidence, although supplied by Olson, was the only competent evidence on the point.

We find that upon remand of this case, Olson shall, within 30 days from the issuance of the mandate herein, perform the work required as interpreted in this opinion, and if he shall fail to do so, judgment shall be rendered against him in the amount of $3,996.20.

We now turn to a consideration of the judgment against Pedersens in the amount of $10,000 for the alleged wrongful detention by them of the machinery of Olson earlier described. As a matter of law such judgment is not supported by the evidence. The evidence indicates that Olson made no effort to retrieve his equipment from the pit site except as follows. In July 1971, Olson sought to remove a bulldozer. He was required by Pedersens to have his attorney contact Pedersens' lawyer and then he was able to obtain that item. In July 1972 he desired to retrieve a bulldozer and later two or three dump trucks. On each occasion Olson was told, apparently by Mrs. Pedersen, that he would have to see their lawyer first. Apparently Mrs. Pedersen interpreted a provision of the contract to prohibit removal by Olson even of mobile equipment (the contract refers to machinery and buildings constructed and maintained on the premises) until "all of the covenants and agreements as herein provided have been fulfilled." Olson did nothing further, but let the machinery sit. When later removed it was essentially worthless. Damages were based upon a claim for rental value and not upon the value of the equipment. We find that Olson should have mitigated his damages by having taken timely legal

action to obtain the equipment. Having not done so, the judgment for $10,000 against the Pedersens must be set aside.

The general principle underlying the duty to mitigate damages has been stated as follows: "Legal rules and doctrines are designed not only to prevent and repair individual loss and injustice, but to protect and conserve the economic welfare and prosperity of the whole community. Consequently, it is important that the rules for awarding damages should be such as to discourage even persons against whom wrongs have been committed from passively suffering economic loss which could be averted by reasonable efforts, or from actively increasing such loss where prudence would require that such activity cease. The machinery by which the law seeks to encourage the avoidance of loss is by denying to the wronged party a recovery for such losses as he could reasonably have avoided, and by allowing him to recover any loss, injury, or expense incurred in reasonable efforts to minimize his injury." McCormick, Damages, C. 5, § 33, p. 127.

In Lawson v. Brokmann, 116 Kan. 102, 226 P. 252, the Kansas Supreme Court approved an instruction requiring the owner of a haybaler wrongfully attached to mitigate his damages. The appellant was claiming lost profits allegedly caused by the lost opportunity of use. The court noted that this appellant could have rented another baler or could have utilized a form of replevin, essentially consisting of a posting of a bond. The court concluded that the law requires such reasonable measures. W. B. Moses & Sons v. Lockwood, 295 F. 936, is in accord. This was another wrongful attachment damage suit. The court stated: "When the plaintiff's car was taken from him, he could have procured its return immediately by giving an undertaking under section 455 of the Code, with security approved by the court. It was his duty to do this and thus to reduce the defendant's liability. If he had done it, the only loss which

would have come to him would be that occasioned by the expense of procuring the undertaking and necessarily incurred for a car between the date of the levy and the return of his own car, assuming that he used due diligence throughout." See, also, Levy v. J. A. Olsen Co., Inc., 237 Miss. 452, 115 S. 2d 296; Lynch v. Call, 261 F. 2d 130. In Schneider v. Daily, 148 Neb. 413, 27 N. W. 2d 550, we find a Nebraska case illustrative of an application of the rule pertaining to the duty to mitigate damages allegedly arising from a failure to return property improperly attached. This court there held that if a mere oral release of the property had not been sufficient, and apparently this was the plaintiff's contention, the plaintiff's damages could only be the cost of transporting the equipment from the place of attachment to his farm. This court said: "The plaintiff will not be permitted to stand by on such a technical excuse and bring action for a large amount of damages when they could have been avoided by the simple expedient of taking his machine at the place where it was attached. He will be required to mitigate his damage the same as any other litigant." We hold that under some circumstances a party may be required to mitigate his damages by resorting to appropriate and reasonable legal remedies to obtain possession of personal property wrongfully detained from him, and if he does not do so, damages will be denied.

The court awarded judgment to Pedersens against Olson in the sum of $1,000 as compensation for mineral royalty for the first 2 years of the lease. Since the lease remained in force, Pedersens are entitled to that annual royalty for those years and that part of the judgment is affirmed. No interest, however, shall be allowed as proper and timely tender was made. The judgment in the sum of $344.10 against Pedersens for gravel sold and the proceeds of which were unaccounted for is affirmed.

At this point we call attention to the fact that the record indicates the parties, through their counsel, have

stipulated that tenders of minimum royalties for the balance of the term of the lease are waived during pendency of the litigation. If Olson wishes the lease to continue those royalties would have to be paid.

Olson asserts that the trial court erred in not awarding damages to him for gravel sales allegedly frustrated because of Pedersens' refusal of access to the premises. Olson testified that after the lease of April 29, 1971, was signed he attempted to sell gravel to Dakota County but was unable to do so. The highway superindendent for Dakota County testified that the county did not purchase gravel because of the dispute between the Pedersens and Olson and that the county did not want to pay twice. The county purchases stopped "when Pedersens received the two checks for the $2,000." The conclusion to be drawn from the record is that these events occurred prior to the signing of the lease of April 29, 1971. The further conclusion would be that the county did not purchase because of the dispute which preceded the settlement between the parties made by the new lease. It follows, therefore, that the gravel sales were not lost because of the Pedersens' attempt to terminate the lease, but because of the earlier dispute. There must be a causal relationship between the damages asserted and the breach relied upon. Proof which leaves this issue in the realm of speculation and conjecture is insufficient to support a judgment. Western Land Roller Co. v. Schumacher, 151 Neb. 166, 36 N. W. 2d 777.

Was the trial court correct in ordering that the gravel stockpile be sold within 18 months? We find that it was. Under the circumstances of this case, it is equitable to apply the rule applicable to ore mined under a lease. Where ore is mined under a lease, the title to it vests as personal property in the lessee as soon as it is mined and removed from its original place, subject, however, to the royalty rights of the lessor. 58 C. J. S., Mines and Minerals, § 177, p. 379. A question arises

as to whether Olson is entitled to credit for the minimum annual royalties paid or to be paid upon the 20 cents per cubic yard royalty which will be owed when the stockpiled gravel is sold. We conclude that under the proper interpretation of the lease he is not. Such a credit would be applicable, we conclude, only where and to the extent that some gravel is sold during the year for which the minimum annual rental or some part thereof is payable.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.