JERRY BIRKEL, APPELLANT, V. HASSEBROOK FARM SERVICE, INC.,
A CORPORATION, APPELLEE.

363 N.W.2d 148

Filed February 15, 1985.   No. 83-529.

Vard R. Johnson of Broom and Johnson, for appellant.

Donald R. Witt and Diane Bevans Carlson of Baylor, Evnen, Curtiss, Grimit & Witt, for appellee.

KRIVOSHA, C.J., HASTINGS, SHANAHAN, and GRANT, JJ., and McCOWN, J., Retired.

SHANAHAN, J.

Jerry Birkel appeals his judgment for damages in the amount of $15,940 entered after a jury's verdict in the district court for Butler County against Hassebrook Farm Service, Inc. Birkel sued Hassebrook for damages arising out of the purchase and installation of a grain storage and drying bin. We reverse and remand for a new trial.

Birkel farms 445 acres on which he produces corn, milo, beans, and alfalfa. From 1955 through 1977 Birkel used a 500-bushel batch dryer to dry grain and then stored the grain in three storage units on his farm. These storage units held approximately 40,000 bushels. In 1978, in an effort to upgrade his operations, Birkel contacted Hassebrook about a new dryer and storage bin with an auxiliary auger system to transfer grain from the new dryer to existing storage bins on Birkel's farm. Birkel signed contracts for the new equipment replacing his present drying system. Hassebrook took Birkel's old dryer as a trade-in on the new equipment. The contracts expressly required that the new dryer, bin, and auger be installed in a

"workmanlike manner." Installation was completed in 1978.

In the spring of 1980, after using the new equipment for nearly 2 years, Birkel detected problems in the recently installed facilities and found spoiled grain in the storage bins. In August, Birkel hired additional labor in a salvage operation to sort the good grain from the spoiled. Although he could not salvage 600 bushels of grain, Birkel salvaged the balance of the grain and sold the salvaged grain. He incurred a total grain loss of $17,092.71.

Testimony established that Hassebrook had failed to rivet part of the dryer apparatus to the concrete floor of the new facility. Such failure to securely fasten parts of the drying system was characterized as "bad workmanship," according to witnesses at trial. On the other hand, Hassebrook attributed Birkel's loss to poor grain management.

The court would not admit evidence about the cost of Birkel's efforts to salvage the unspoiled grain. Also, Birkel attempted to present evidence that an alternative or substitute grain-drying facility was necessary in his farm operations until the defective drying and storage system purchased from Hassebrook was replaced. One of Birkel's expert witnesses, Larry VonFossen, a specialist in agricultural engineering and storage facilities, was asked whether Birkel would have additional operating costs to the farm if the defective installation deprived Birkel of a dryer and storage facility. The critical part of the question asked VonFossen follows:

> Q. Mr. VonFossen, in regard to Mr. Birkel's situation with this bin, the drying unit and the storage units, if Mr. Birkel was deprived of the use of this for a year, a season at a time, would he have additional cost to replace this bin, operating costs?
>
> [Hassebrook's attorney]: I object to the question. It is calling for an opinion for which there is insufficient foundation. It is also calling for an opinion regarding recovery of damages that is not recoverable under Nebraska law, therefore it is irrelevant and immaterial.
>
> . . . .
>
> THE COURT: Sustained.
>
> [Birkel's attorney]: We would move to make an offer of

proof, Your Honor.

. . . .

[Birkel's attorney]: Comes now the plaintiff and as an offer of proof, tenders to the Court that if this witness were allowed to answer, he would answer that the plaintiff, Jerry Birkel, has continuing costs of drying equipment for drying his annual yield of corn until this bin is repaired.

In addition thereto, he has lost storage facilities because he does not have an adequate dryer on the premises.

[Hassebrook's attorney]: I renew my objection. It is calling for an opinion for which there is insufficient foundation, and also to request for an opinion on damage which is not recoverable under Nebraska laws, and therefore is irrelevant and immaterial.

THE COURT: I will sustain it.

The trial court refused to give Birkel's tendered instruction on incidental and consequential damages due to Hassebrook's breach of contract. The jury returned a verdict for Birkel in the amount of (1) $12,140 for damages to buildings and equipment and (2) $3,800 for damages to grain.

On appeal Birkel argues that he should have been allowed to adduce evidence concerning his additional costs in obtaining alternative drying and storage facilities, after Hassebrook's breach of the installation contract. Birkel also argues that he should have been permitted to present evidence regarding the expenses incurred for labor and rental equipment in salvaging the unspoiled grain in mitigation of damages. We believe that the trial court should have allowed Birkel's evidence about expenses in obtaining alternative drying and storage facilities as a substitute for the malfunctioning grain storage and drying bin. Failure to admit such evidence is reversible error.

We note that Hassebrook argues Birkel's offer of proof is insufficient because there is nothing about "additional costs." Rule 103(1)(b) of the Nebraska Evidence Rules contains:

(1)   Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and:

. . . .

(b)   In case the ruling is one excluding evidence, the substance of the evidence was made known to the judge by offer or was apparent from the context within which questions were asked.

Neb. Rev. Stat. § 27-103 (Reissue 1979). Rule 103(1)(b) provides that only the substance of the excluded testimony must be disclosed in an offer of proof. Further, if the substance of the evidence is apparent from the context in which the question is asked, an offer of proof is not necessary. *Sherman County Bank v. Kallhoff*, 205 Neb. 392, 288 N.W.2d 24 (1980). The question asked the expert witness clearly indicates that Birkel's expert, if permitted, would have testified that Birkel had sustained additional costs in obtaining alternative drying and storage facilities. However, the substance of the evidence from Birkel's expert witness was readily apparent from the nature and context of the question. An offer of proof was superfluous under the circumstances.

Hassebrook's objection to the testimony of Birkel's expert witness was predicated on relevancy, namely, additional cost of operation is not a proper item of damages recoverable, and, therefore, is irrelevant.

As a general rule, a party injured by a breach of contract is entitled to recover all damages which are reasonably certain and which are naturally expected to follow the breach. *Midlands Transp. Co. v. Apple Lines, Inc.*, 188 Neb. 435, 197 N.W.2d 646 (1972). As § 347 of the Restatement (Second) of Contracts (1981) states at 112:

Subject to the limitations stated in §§ 350-53, the injured party has a right to damages based on his expectation interest as measured by

(a)   the loss in the value to him of the other party's performance caused by its failure or deficiency, plus

(b)   any other loss, including incidental or consequential loss, caused by the breach, less

(c)   any cost or other loss that he has avoided by not having to perform.

The requirement of foreseeability of damages limits recovery. The necessity of foreseeability in damages had its genesis in the landmark case of *Hadley v. Baxendale*, 9 Ex. 341,

156 Eng. Rep. 145 (1854), now a keystone in contract law. Section 351 of the Restatement, *supra*, incorporates foreseeability as a factor in determining damages recoverable:

> (1) Damages are not recoverable for loss that the party in breach did not have reason to foresee as a probable result of the breach when the contract was made.
>
> (2) Loss may be foreseeable as a probable result of a breach because it follows from the breach
>
> (a) in the ordinary course of events, or
>
> (b) as a result of special circumstances, beyond the ordinary course of events, that the party in breach had reason to know.
>
> (3) A court may limit damages for foreseeable loss by excluding recovery for loss of profits, by allowing recovery only for loss incurred in reliance, or otherwise if it concludes that in the circumstances justice so requires in order to avoid disproportionate compensation.

*Id*. at 135.

Under the principles of reasonable certainty and natural consequence of a breach of contract, as set forth in *Midlands Transp. Co. v. Apple Lines, Inc., supra*, and in view of the Restatement (Second) of Contracts, in an action for breach of a contract a wronged party may recover damages when, at entering a contract, a wrongdoer had reason to know the damages which would probably result from a breach or when damages are the kind which naturally follow a breach. In the case at hand, Hassebrook can hardly argue it was unaware that Birkel would have to find alternative facilities in the event that the purchased and installed facilities failed. Further, given the nature of Birkel's operations known to Hassebrook, it cannot be seriously maintained that Birkel's expenses in finding alternative drying and storage facilities are not an element of damage contemplated when the contract was entered or did not naturally follow from Hassebrook's breach of contract. Also, we note *Olson v. Pedersen*, 194 Neb. 159, 231 N.W.2d 310 (1975), wherein this court held that a wronged party in a contractual dispute may recover any loss, injury, or expense incurred in reasonable efforts to minimize his injury.

Because we reverse for a new trial on the question of

damages, we need not address Birkel's argument concerning recovery of damages attributable to the salvage operations. If properly presented in the action, salvage costs may, likewise, be recoverable. See *Olson v. Pedersen, supra*.

REVERSED AND REMANDED FOR A NEW TRIAL.