LYNCH GUY HOLLAMON, APPELLANT, v. EAGLE RACEWAY, INC., A CORPORATION, ET AL., APPELLEES.

188 N. W. 2d 710

Filed July 9, 1971. No. 37938.

222

Johnston, Grossman & Johnston, for appellant.

Cline, Williams, Wright, Johnson & Oldfather, Kevin Colleran, Ginsburg, Rosenberg, Ginsburg & Krivosha, and Frederick H. Kauffman, for appellee Eagle Raceway, Inc.

Joseph J. Cariotto, for appellee Quattrocchi.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

SPENCER, J.

Plaintiff, Lynch Guy Hollamon, brought this action against Eagle Raceway, Inc., a corporation, and Louis S. Quattrocchi, defendants, for injuries sustained May 1, 1965, at the Eagle Raceway when Quattrocchi's racing car went out of control and catapulted into a spot in the pit area where plaintiff was sitting on a chair beside his own stock car which was participating in the races being held on that date. A motion for summary judgment was sustained, dismissing the action as against Eagle Raceway, Inc., which will hereinafter be referred to as defendant. Plaintiff perfected this appeal. We affirm.

The motion was premised on an anticipatory release executed by the plaintiff, and the assumption of the

risks involved in automobile racing. The order of the district court did not specify the precise basis on which the dismissal was sustained.

The release and waiver of liability agreement was judicially established in Brander v. Eagle Raceways, Inc., a declaratory judgment action docketed at Docket 248, Page 194, in the district court for Lancaster County, Nebraska. That case was an equity action in which a jury was called at plaintiff's request. Among the issues presented was the execution and existence of a waiver and release from liability and indemnity agreement given by plaintiff to defendant. The jury determined that the plaintiff signed the release and waiver of liability and indemnity agreement on May 1, 1965, prior to the races and prior to the accident, naming the Eagle Raceways, Inc., as the party to be released. The waiver of liability and indemnity agreement referred to in the verdict of the jury is the identical release agreement involved herein.

Plaintiff sets out 11 assignments of error. The only issue involved is whether or not the summary judgment was properly sustained and the cause of action properly dismissed as against Eagle Raceway, Inc. The answer depends upon whether there is any merit to either of the two principal issues presented: (1) The effect of the waiver and release agreement; and (2) whether plaintiff assumed the risk of injury.

In consideration of permission to enter upon the track premises operated by the defendant the plaintiff executed the release exonerating the defendant from all liability for injuries, and specifically assuming all risks incident to his presence on the premises. Plaintiff in his reply pleads fraud in the execution of the release. Whether the record sufficiently pierces the plaintiff's allegations is an issue it is not necessary for us to meet herein.

We find that the plaintiff, by participating in the racing program May 1, 1965, as a stock car owner, and entering the pit area as a participant in the racing program,

brought himself within the ambit of the maxim "volente non fit injuria," which means where one, knowing and comprehending the danger, voluntarily exposes himself to it, although not negligent in so doing, he is deemed to have assumed the risk and is precluded from a recovery for an injury resulting therefrom. Munson v. Bishop Clarkson Memorial Hospital, 186 Neb. 778, 186 N. W. 2d 492.

Plaintiff in his brief contends that assumption of risk was not pleaded with sufficient factuality to constitute an issue herein. There is no merit to this contention. The defendant, more than a month before the filing of its second amended answer, had taken plaintiff's deposition exploring the possibility of this defense. Defendant's second amended answer specifically incorporated the defense in paragraph 6. The allegations therein are as follows: "Alleges that any injuries or damages sustained by the plaintiff were the result of risks and dangers which were incidental to the sport of auto racing; that said risks and dangers were known and appreciated by the plaintiff; that the plaintiff voluntarily or deliberately exposed himself to said risks and dangers; and that plaintiff thereby voluntarily assumed the risks of any injuries or damages which he might have sustained." Clearly, this was sufficient to alert plaintiff to the defense of assumption of risk.

The facts, from plaintiff's admissions, show that he was the coowner of an automobile participating in the races on May 1, 1965, sponsored and promoted by defendant. The same day, Louis S. Quattrocchi was driving one of the racing cars entered in the race, and during the course of the first race a malfunction occurred which caused Quattrocchi's automobile to accelerate and to leave the track and catapult into the pit area, injuring plaintiff. The plaintiff's vehicle was parked in a spot reserved for it in the pit area, which was located beyond the oval end of the track which formed the first two turns. Plaintiff's car was parked approximately 150 feet from the

east edge of the track. The pit area was on an incline, and the easternmost or back edge of the pit was about 15 feet above the track, according to plaintiff's estimate. Plaintiff's trailer was parked against the south fence. He was sitting to the rear of his car, almost straight east and perhaps a little south of the roadway leading from the race track to the pit area.

There is no factual dispute that plaintiff knew and appreciated the danger of being in the pit area. Plaintiff's car on previous occasions had generally been in this same area. He was aware that he was directly east of the opening off the first turn while in the pit area. Plaintiff conceded that there are some risks incident to racing, and estimated that if he were to consider racing accidents over the whole racing season they would average one an evening. He stated that he would expect cars to go out of control on occasions, and had considered the possibility of an accident from a car coming into the pit area. While he viewed races from the pits most of the time, he could have gone any place else in the vicinity. There was no restriction confining him to the spot where his car was parked. In this respect, the record is conclusive that the location in the pit area chosen by plaintiff to view the race was the result of his own decision, and was not at the direction or designation of defendant.

One who participates in the sport of stock car racing assumes the ordinary risks of that sport. McCullough v. Omaha Coliseum Corp., 144 Neb. 92, 12 N. W. 2d 639. This includes one present as a participant in the pit area when a car goes out of control and enters the pit area.

Summary judgment is an extreme remedy and should be awarded only when the issue is clear beyond all doubt, and any reasonable doubt touching the existence of a genuine issue of material fact must be resolved against the moving party. Storz Brewing Co. v. Kuester, 178 Neb. 135, 132 N. W. 2d 341, 21 A. L. R. 3d 476. In

this instance, we believe that the defendant has met the test.

It is obvious from plaintiff's admissions that he knew and appreciated the danger inherent in his participation in the racing program; that he voluntarily exposed himself to the danger; and that as a proximate result of the danger he sustained his injuries. There is no material fact issue requiring a jury submission, so summary judgment was properly entered. "Summary judgment is authorized when the moving party is entitled to judgment as a matter of law, it is clear what the truth is, and no genuine issue remains for trial." John Deere Co. v. Van Conet, 185 Neb. 135, 174 N. W. 2d 85.

For the reasons given, the judgment is affirmed.

AFFIRMED.