CHRIS M. MAYER, APPELLANT, V. RALPH HOWARD, DOING BUSINESS AS SCRIBNER RACEWAYS, APPELLEE.

370 N.W.2d 93

Filed July 5, 1985. No. 84-275.

Richard J. Rensch of Hansen, Engles & Locher, P.C., for appellant.

John C. Brownrigg of Erickson & Sederstrom, P.C., for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

PER CURIAM.

Chris M. Mayer appeals from a judgment entered by the district court for Douglas County, Nebraska, granting summary judgment in favor of the appellee, Ralph Howard, doing business as Scribner Raceways. We affirm.

Mayer filed suit against Howard, alleging that he sustained injuries due to the negligent design, construction, or maintenance of the racetrack owned and operated by Howard. The evidence disclosed that on September 13, 1981, Mayer took a 750 cc. motorcycle to Scribner Raceways in order to participate in an elapsed time trial drag race. Mayer had frequently raced automobiles but had never before raced a motorcycle. Upon entering the premises Mayer filled out a card supplying information about himself and his cycle. The reverse side of the card, which required his signature, read in part as follows:

### RELEASE OF LIABILITY

This release limits your right to recovery of damages in case of accident. Read it before signing.

In applying to enter this race I promise that I will inspect the track prior to running on it, *will assure myself that the track and adjacent areas are properly designed and*

*maintained*, and further agree that I will not participate in this race until I have completed an inspection which satisfies me that these areas are safe for race purposes. I will further note existing weather conditions and do agree that I voluntarily assume all risks arising from conditions related to use of the track areas by myself or others.

*I do agree to hold harmless and indemnify the owners and possessors of this track for any loss, cost, expense, damage or injury arising from my participation in this event.*

(Emphasis supplied.)

Mayer signed a second document, which read in part as follows:

IN CONSIDERATION of being permitted to enter for any purpose any RESTRICTED AREA (herein defined as including but not limited to the racing surface, pit areas, infield, burn out area, approach area, shut down area, and all walkways, concessions and other areas appurtenant to any area where any activity related to the event shall take place), or being permitted to compete, officiate, observe, work for, or for any purpose participate in any way in the event, EACH OF THE UNDERSIGNED, for himself, his personal representatives, heirs, and next of kin, acknowledges, agrees and represents that he has, or will immediately upon entering any of such restricted areas, and will continuously thereafter, inspect such restricted areas and all portions thereof which he enters and with which he comes in contact, and he does further warrant that his entry upon such restricted area or areas and his participation, if any, in the event constitutes an acknowledgement that he has inspected such restricted area and that he finds and accepts the same as being safe and reasonably suited for the purposes of his use, and he further agrees and warrants that if, at any time, he is in or about restricted areas and he feels anything to be unsafe, he will immediately advise the officials of such and will leave the restricted areas:

1. HEREBY RELEASES, WAIVES, DISCHARGES

AND COVENANTS NOT TO SUE the promoter, participants, racing association, sanctioning organization or any subdivision thereof, track operator, track owner, officials, car owners, drivers, pit crews, any persons in any restricted area, promoters, sponsors, advertisers, owners and lessees of premises used to conduct the event and each of them, their officers and employees, all for the purposes herein referred to as "releasees", from all liability to the undersigned, his personal representatives, assigns, heirs, and next of kin for any and all loss or damage, and any claim or demands therefor on account of injury to the person or property or resulting in death of the undersigned, whether caused by the negligence of the releasees or otherwise while the undersigned is in or upon the restricted area, and/or, competing, officiating in, observing, working for, or for any purpose participating in the event;

. . . .

*EACH OF THE UNDERSIGNED expressly acknowledges and agrees that the activities of the event are very dangerous and involve the risk of serious injury and/or death and/or property damage.* EACH OF THE UNDERSIGNED further expressly agrees that the foregoing release, waiver, and indemnity agreement is intended to be as broad and inclusive as is permitted by the law of the Province or State in which the event is conducted and that if any portion thereof is held invalid, it is agreed that the balance shall, notwithstanding, continue in full legal force and effect.

THE UNDERSIGNED HAS READ AND VOLUNTARILY SIGNS THE RELEASE AND WAIVER OF LIABILITY AND INDEMNITY AGREEMENT, and further agrees that no oral representations, statements or inducements apart from the foregoing written agreement have been made.

(Emphasis supplied.)

After signing the various documents Mayer proceeded to race his motorcycle on the first and only practice run of the day. He accelerated his motorcycle to speeds in excess of 100 m.p.h.

until he crossed the one-quarter-mile marker, after which time he decelerated by disengaging the throttle. Upon doing so, Mayer's motorcycle became airborne, causing Mayer to crash and incur the injuries complained of in his petition. He maintains that the reason his motorcycle became airborne was that the racing strip was latently and defectively designed.

Mayer, in essence, alleges two errors committed by the district court. One, that there are genuine material issues of fact, thereby precluding the district court from granting summary judgment. And, two, that the releases did not relieve the owner of the track of liability for latent defects in the design of the track. In connection with the second assignment Mayer maintains that, in any event, the releases were contrary to public policy under the facts of this case.

In the instant case the question of whether the district court should have granted summary judgment depends, to a great extent, on whether as a matter of law Howard could not be liable to Mayer for latent defects in the design of the track, if any existed, under the facts of this case.

We have frequently held that where no genuine issue as to any material fact or as to the ultimate inferences to be drawn therefrom exists and the moving party is entitled to judgment as a matter of law, summary judgment should be granted. See, Neb. Rev. Stat. § 25-1332 (Reissue 1979); *Moore v. American Charter Fed. Sav. & Loan Assn.*, 219 Neb. 793, 366 N.W.2d 436 (1985); *Witherspoon v. Sides Constr. Co.*, 219 Neb. 117, 362 N.W.2d 35 (1985). On a motion for summary judgment, the court is required to view the evidence and all reasonable inferences therefrom in the light most favorable to the party against whom it is directed, and any reasonable doubt touching the existence of a genuine issue of material fact must be resolved against the moving party. See, *Wood v. Farwell Irr. Dist.*, 217 Neb. 511, 349 N.W.2d 633 (1984); *De Los Santos v. Great Western Sugar Co.*, 217 Neb. 282, 348 N.W.2d 842 (1984). If, in fact, the language of the documents is sufficient and the documents executed by Mayer are not contrary to public policy, then there does not appear to be any genuine issue as to any material fact, and the district court was correct in granting Howard's motion for summary judgment. To resolve the first

question, therefore, we must turn to a resolution of the second issue.

While Mayer characterizes the documents he signed as "releases," in fact they were much more. Although cast in the form of releases, the documents signed by Mayer were in fact an express assumption of the risk, and were intended to call Mayer's attention to the dangers inherent in racing automobiles and motorcycles and the need for Mayer to satisfy himself that he knew what he was doing and that the track and surrounding area were as safe as Mayer desired before attempting to engage in racing the motorcycle at high speeds. In effect, the documents were intended to make sure that Mayer knew and comprehended the dangers to which he was voluntarily exposing himself before Howard would permit him to operate a motorcycle on the track.

Mayer does not deny that he signed the documents, although he argues that he did not read them, contrary to the statements contained in the documents themselves. That he did not read them when he had an opportunity to do so is of no legal consequence. We have regularly held, both with regard to documents generally and releases particularly, that the failure to read a document before signing, when afforded the opportunity to do so, does not invalidate the document. In *Day v. Kolar*, 216 Neb. 47, 49, 341 N.W.2d 598, 599 (1983), we said: "In the absence of fraud one who signs an instrument without reading it, when he can read and has the opportunity, cannot avoid the effect of his signature merely because he was not informed of the contents of the document." And, earlier, in *Swartz v. Topping*, 191 Neb. 41, 44, 213 N.W.2d 718, 721 (1974), we said: "The rule is well established that a party who has the capacity and opportunity to read a release of claims for personal injuries but fails to do so is estopped by his own negligence from claiming that the release is not binding on him."

Mayer's principal argument is that the defect which resulted in his injury was the negligent design of the track, a fact which he maintains he could not have determined even by inspection. Therefore, he argues, the signing of the documents did not relieve Howard of liability for the defective design.

As we have already indicated, we do not believe that the language of the documents is as narrow or as limited as Mayer argues. One of the documents specifically represents that Mayer

> will inspect the track prior to running on it, will assure [himself] that the track and adjacent areas are properly *designed and maintained*, and further agree that [he] will not participate in this race until [he has] completed an inspection which satisfies [him] that these areas are safe for race purposes.

(Emphasis supplied.) By executing this document Mayer specifically represented that he would satisfy himself as to the safety of the track, not only by inspection, but would further assure himself that the track and the adjacent areas were properly designed and maintained and that he would not participate in the race until he had so satisfied himself. While the allegedly negligent design may not have been apparent to the naked eye, Mayer did not limit the document to that which he could see. He agreed to take whatever steps were necessary to assure and satisfy himself that the design of the track was proper, and further agreed that he would not race until he had satisfied himself that the track was safe. Additionally, Mayer specifically agreed to hold Howard harmless for any loss arising from his participation in the race, regardless of the cost. It is difficult to imagine how a more encompassing document, under the facts, could be prepared.

Further, in the second document signed by Mayer, he once again acknowledged that he would inspect the area and satisfy himself that the track was safe. By signing the second document Mayer acknowledged that the activities of the event are "very dangerous and involve the risk of serious injury and/or death and/or property damage." To suggest that Mayer was only agreeing to assume the risk for those defects which he could detect in a casual examination or inspection of the track or that the documents were not intended to cover the very situation involved in this case is to simply fail to recognize the plain language of the documents. Unless the documents are contrary to public policy and therefore invalid, they exculpated Howard from any liability in this case.

We have previously held that courts should be cautious in holding contracts void on the ground that the contract is contrary to public policy. See *Beaver Lake Assn. v. Beaver Lake Corp.*, 200 Neb. 685, 264 N.W.2d 871 (1978). To be void as against public policy, a contract should be quite clearly repugnant to the public conscience. See *Brisbin v. E. L. Oliver Lodge No. 335*, 134 Neb. 517, 279 N.W. 277 (1938). Therefore, one of the questions we must first decide is whether a document which relieves the owner of a racetrack from liability to one of the racers is repugnant to the public conscience.

Although we have never had occasion to pass upon the validity of documents such as are involved in this case, we have earlier held in the case of *Hollamon v. Eagle Raceway, Inc.*, 187 Neb. 221, 188 N.W.2d 710 (1971), that even without a release, one who engages in racing activities assumes the risk of such activities and is precluded from recovering for any injury resulting therefrom. In *Hollamon, supra* at 223-24, 188 N.W.2d at 711, we said:

> We find that [Hollamon], by participating in the racing program May 1, 1965, as a stock car owner, and entering the pit area as a participant in the racing program, brought himself within the ambit of the maxim "volente non fit injuria," which means where one, knowing and comprehending the danger, voluntarily exposes himself to it, although not negligent in so doing, he is deemed to have assumed the risk and is precluded from a recovery for an injury resulting therefrom.

We went on to say at 225, 188 N.W.2d at 712, "One who participates in the sport of stock car racing assumes the ordinary risks of that sport." It seems to us that the same rule should apply whether the vehicle being raced is a stock car or a motorcycle.

Mayer argues that he did not know or comprehend the danger of a defective design of the track. Without deciding whether there was a latent defect, but assuming for the sake of argument that such a defect did exist, we believe Mayer cannot claim he did not know or comprehend the dangers of a latent defect in the design of the track. That was exactly what he agreed to check out before racing. In agreeing to satisfy himself

that the track was properly designed, constructed, and maintained, and further acknowledging that he understood that racing a motorcycle at a speed of 100 m.p.h. was dangerous, Mayer assumed the risk for any injury which might reasonably flow as a result of his falling off the motorcycle, including any latent defect in the design of the track. See *Winterstein v. Wilcom*, 16 Md. App. 130, 293 A.2d 821 (1972).

Because the documents signed by Mayer simply brought to his attention these matters which Howard believed to be necessary to make an informed decision to race, and which if known and understood by Mayer constituted an assumption of risk on his part, the documents could not be contrary to public policy, and in fact reflected the public policy. Mayer was not entitled to recover from Howard for injuries sustained by Mayer when he assumed the risk for such injuries. See, *Schlessman v. Henson*, 83 Ill. 2d 82, 413 N.E.2d 1252 (1980); *LaFrenz, Adm. v. Lake Co. Fair Bd. et al.*, 172 Ind. App. 389, 360 N.E.2d 605 (1977).

For that reason there is no genuine issue as to any material fact. The district court was correct in granting summary judgment. The judgment is affirmed.

AFFIRMED.