DAN K. WAYLETT, APPELLEE, V. UNITED SERVICES AUTOMOBILE ASSOCIATION, APPELLANT.

401 N.W.2d 160

Filed February 20, 1987. No. 85-341.

James W. Knowles and Edward A. Mullery, for appellant.

Martin A. Cannon of Matthews & Cannon, P.C., for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

KRIVOSHA, C.J.

This appeal involves the interpretation of an underinsured motorist coverage policy issued by the appellant, United Services Automobile Association (U.S.A.A.), to the appellee, Dan K. Waylett.

The record discloses that on August 5, 1981, an automobile, then being driven by Waylett and occupied by his wife, Maryann, and their two daughters, Denise and Michele, was struck head on when an automobile driven by one Valerie Fitzpatrick came across the centerline of the highway. As a result of the accident all four occupants were injured. It was admitted that the automobile, owned by Paul and Julie Foxhoven and being driven by Fitzpatrick, was covered by a policy of automobile insurance with a limit of $100,000 per accident. It was further admitted that the carrier paid in settlement of the claims of the parties the policy limits, divided as follows: Maryann Waylett, $50,000; Michele Waylett, $25,000; Dan Waylett, $25,000. It was further admitted that the driver of the automobile, Valerie Fitzpatrick, also had a policy of insurance with a limit of $50,000 per accident and that the entire policy was paid by the carrier as follows: Maryann Waylett, $25,000; Denise Waylett, $25,000. It was further admitted that the county of Sarpy, Nebraska, had a policy of liability insurance and, in apparent settlement of claims made by the Wayletts, paid to them a total of $175,000 as follows: Maryann Waylett, $120,000; Denise Waylett, $35,000; Michele Waylett, $10,000; Dan Waylett, $10,000. The Wayletts therefore received a combined payment of $325,000 from all persons or organizations which might be responsible for the injuries they suffered as a result of the accident on August 5, 1981.

Waylett then sought to recover additional damages from U.S.A.A. under an underinsured motorist endorsement issued by U.S.A.A. Following the overruling of a motion for

summary judgment made by U.S.A.A., the court sustained Waylett's motion for a bifurcated trial, and a jury was impaneled to determine the amount of the damages incurred by the Wayletts. The district court, then sitting without a jury, held a separate hearing to determine what part, if any, of the damages was covered by the underinsured motorist coverage. The court rendered its judgment as follows: Maryann Waylett, $25,000; Denise Waylett, $75,000; Michele Waylett, $75,000; Dan Waylett, $75,000. It is from that judgment which U.S.A.A. now appeals. In support of its appeal it assigns 10 errors. Because of the manner, however, in which we dispose of this case, we need only consider assignment of error No. 5, which reads: "The District Court erred in failing to offset the amounts paid by the insurers of Valerie Fitzpatrick, Paul Foxhoven, Julie Foxhoven, and Sarpy County against the limit of liability per accident of the underinsured motorist coverage." We agree with U.S.A.A. that the district court erred, and, for that reason, we reverse and dismiss.

The underinsured motorist coverage is contained in an endorsement made a part of a policy purchased by Waylett from U.S.A.A. The policy provides in part: "We will pay damages which a **covered person** is legally entitled to recover from the owner or operator of an **underinsured motor vehicle** because of bodily injury: 1. Sustained by a **covered person;** and 2. Caused by an accident."

The policy then further provides: "We will pay under this coverage only after the limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements."

The schedule on the policy provides that the limits of liability on the policy are $100,000 for each person; $300,000 for each accident. The policy has a further provision, however, which affects the amount of coverage. The policy provides: "However, the limit of liability shall be *reduced* by *all sums* paid because of the bodily injury by or on behalf of *persons or organizations* who *may be* legally responsible." (Emphasis supplied.) U.S.A.A. contends that because the amounts paid by Fitzpatrick, the Foxhovens, and Sarpy County exceeded $300,000, to wit: $325,000, the limit of liability per each

accident was reduced to zero, and therefore there was no underinsured motorist coverage.

Waylett, on the other hand, maintains that U.S.A.A. is not entitled to consider the payments made by Sarpy County. In support of that position, Waylett cites to us the cases of *State Farm Mut. Auto. Ins. Co. v. Selders*, 187 Neb. 342, 190 N.W.2d 789 (1971), and *Stephens v. Allied Mut. Ins. Co.*, 182 Neb. 562, 156 N.W.2d 133 (1968). In particular, Waylett cites to us from *State Farm Mut. Auto. Ins. Co. v. Selders, supra* at 347, 190 N.W.2d at 792, as follows:

"A provision, drawn by the insurer to comply with the statutory requirement of *uninsured* motorist coverage, must be construed in light of the purpose and policy of the statute. Such a provision, drawn in pursuance of a statutorily declared public policy, is enacted for the benefit of injured persons traveling on the public highways. Its purpose is to give the same protection to the person injured by an uninsured motorist as he would have had if he had been injured in an accident caused by an automobile covered by a standard liability policy. Such provisions are to be liberally construed to accomplish such purpose." Statutory requirements must be complied with by insurers and if the policy issued fails in this respect, the statute will be read into the policy.

(Emphasis supplied.)

That citation has no application in the instant case for two reasons. In the first place, at the time that the underinsured motorist coverage was issued by U.S.A.A. to Waylett, there was no underinsured motorist statute, and therefore the agreement was simply the result of negotiations between the parties.

Furthermore, the Underinsured Motorist Insurance Coverage Act, enacted by the Nebraska Legislature on January 1, 1987, Neb. Rev. Stat. §§ 60-571 to 60-582 (Cum. Supp. 1986), contains provisions significantly different from the provisions of the uninsured motorist coverage involved in *Selders* and *Stephens* (see Neb. Rev. Stat. §§ 60-509.01 to 60-509.04 (Reissue 1984)). In particular, there is no provision in the *un*insured motorist statutes similar to the underinsured

motorist statute, § 60-578, reducing the liability by reason of amounts paid or received. Rather than attempting to decide this on the basis of some statutorily declared public policy, we are, instead, required to determine this on the basis of the plain meaning of the contract entered into between the parties.

We observed in *Safeco Ins. Co. of America v. Husker Aviation, Inc.*, 211 Neb. 21, 25, 317 N.W.2d 745, 748 (1982): " 'An insurance policy should be construed as any other contract to give effect to the intent of the parties at the time it was made. . . .' "

In *Lumbard v. Western Fire Ins. Co.*, 221 Neb. 804, 807, 381 N.W.2d 117, 119 (1986), we further said: "The rule controlling the resolution of the issues presented by that ground is that an insurance policy is to be construed as any other contract; if its terms are clear, they are to be applied according to their plain and ordinary meaning." We further observed in *Lumbard, supra* at 807, 381 N.W.2d at 119:

It is true that if an insurance policy is ambiguous, it will be construed in favor of the insured. However, an ambiguity exists only when the policy can be interpreted to have two or more reasonable meanings. *Denis v. Woodmen Acc. & Life Co.*, 214 Neb. 495, 334 N.W.2d 463 (1983). An ambiguity will not be read into policy language which is plain and unambiguous in order to construe it against the preparer of the contract.

And, in the case of *Pettid v. Edwards*, 195 Neb. 713, 716, 240 N.W.2d 344, 346-47 (1976), we said:

The parties to an insurance contract may contract for any lawful coverage and the insurer may limit its liability and impose restrictions and conditions upon its obligation under the contract not inconsistent with public policy or statute. Mills v. Aetna Ins. Co., 168 Neb. 612, 96 N.W.2d 721. An insurance policy should be considered as any other contract and be given effect according to the ordinary sense of the terms used, and if they are clear they will be applied according to their plain and ordinary meaning. Preferred Risk Mut. Ins. Co. v. Continental Ins. Co., 172 Neb. 179, 109 N.W.2d 126.

The plain language of the policy in this case limited the

liability of the intervener to the limit stated in the declarations as applicable to each person, regardless of the number of automobiles to which the policy applied. It is difficult to see how the intervener could have stated more clearly the limit for medical payments coverage would be $1,000 per person per accident although the policy might apply to more than one automobile. In view of the language used the plaintiff could have no reasonable expectation that the policy did not mean exactly what it said.

(Emphasis omitted.) See, also, *Johnsen v. Harper*, 213 Neb. 145, 328 N.W.2d 192 (1982).

Our examination of the provisions of the endorsement leads us to the conclusion that the language is clear and unambiguous and requires no interpretation.

With these rules in mind we then examine the policy in question. It provides in clear and precise terms that the $300,000 (the limit of liability) is to be reduced by *all sums* paid because of the bodily injury by or on behalf of *persons or organizations which may* be legally responsible. We can perceive of no way in which the sentence could be made any clearer. The word "all" is one of the most inclusive terms in the English language and does not exclude anyone or anything. As we said in *Kellogg Company v. Herrington*, 216 Neb. 138, 147, 343 N.W.2d 326, 332 (1984): "Few words in the English language are as clear in meaning as is 'all' . . . . 'The word "all" is commonly understood and usually does not admit of an exception, addition or exclusion.' " Therefore, all of the moneys are to be used in reducing the limits of liability if they were paid because of the bodily injury by or on behalf of persons or organizations which may be legally responsible. All of the moneys paid, including that paid by Sarpy County, were paid because of injuries sustained in an accident on August 5.

And, finally, we must simply acknowledge that Sarpy County's payment was not made as a donation, but had to have been made because Sarpy County thought it may have been liable. The policy does not say that it must be paid by persons who are *found* to be legally responsible, but only who *may* be legally responsible. One is hard pressed to imagine that Sarpy

County ordered its carrier to pay $175,000 to the Wayletts if it did not believe it may be responsible.

Furthermore, we believe that if the policy was intended to be limited to payments made by the driver or owner of the automobile, it would have been easy enough to say that. In the earlier part of the endorsement the driver or owner is described. The policy provides: "We will pay damages which a **covered person** is legally entitled to recover from *the owner or operator of an underinsured motor vehicle* because of bodily injury." (Emphasis supplied.) Had this been the carrier's intent, it would have been relatively easy to have inserted in the later provision that the limits of liability shall be reduced by all sums paid because of bodily injury by or on behalf of "the owner or operator of an underinsured motor vehicle." The endorsement did not so read.

We believe that we are left with no choice except to conclude that we must consider all sums paid by all persons and organizations, including Sarpy County. When that is done, the liability under the policy is reduced to zero, and there is no sum due and owing from U.S.A.A. to the Wayletts. One may argue that this seems unfair. The simple answer is, however, that that is the contract which was entered into between Waylett and U.S.A.A., and the court is not free to redraft the contract.

We believe that the district court was in error in denying the motion for summary judgment made by the appellant, and for that reason we need not consider any of the other assignments of error raised by U.S.A.A. The judgment of the district court is reversed and remanded with directions to dismiss.

REVERSED AND REMANDED WITH
DIRECTIONS TO DISMISS.