TED ALLEMANG, APPELLANT AND CROSS-APPELLEE, V.
KEARNEY FARM CENTER, INC., DOING BUSINESS AS
KEARNEY AG CENTER, APPELLEE AND CROSS-APPELLANT.
554 N.W.2d 785

Filed November 1, 1996. No. S-94-1198.

Patrick J. Nelson, of Jacobsen, Orr, Nelson, Wright, Harder & Lindstrom, P.C., for appellant.

Kent A. Schroeder and Vikki S. Stamm, of Ross, Schroeder, & Romatzke, for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

CAPORALE, J.

## I. STATEMENT OF CASE

In this replevin action, the district court found that the defendant-appellee, Kearney Farm Center, Inc., doing business as Kearney Ag Center, hereinafter referred to as Kearney Center, had wrongfully detained possession of equipment that the plaintiff-appellant, Ted Allemang, was entitled to possess, and entered judgment in the sum of $8,685.37 in his favor. Claiming that he was entitled to greater damages, Allemang appealed to the Nebraska Court of Appeals; Kearney Center

cross-appealed, also asserting that the district court had miscalculated the damages. The Court of Appeals affirmed the judgment of the district court, but modified it by reducing it to $6,393.40. See *Allemang v. Kearney Farm Ctr.*, 96 NCA No. 17, case No. A-94-1198) (not designated for permanent publication). Allemang then successfully sought further review by this court, asserting, in summary, that the Court of Appeals erred in determining (1) the proper measure of damages and (2) the period of wrongful detention. We affirm.

## II. SCOPES OF REVIEW

Replevin is a law action wherein, where tried without a jury, the findings and disposition of the trial court have the effect of a verdict and will not be disturbed unless clearly wrong. *Packett v. Lincolnland Towing*, 227 Neb. 595, 419 N.W.2d 149 (1988); *Ford v. Jordan*, 220 Neb. 492, 370 N.W.2d 714 (1985). However, to the extent questions of law are involved, we have an obligation to reach our own conclusions independent of those reached by the lower courts. See, *Baltensperger v. Wellensiek*, 250 Neb. 938, 554 N.W.2d 137 (1996); *In re Estate of Ackerman*, 250 Neb. 665, 550 N.W.2d 678 (1996); *Kelley v. Benchmark Homes, Inc.*, 250 Neb. 367, 550 N.W.2d 640 (1996).

## III. FACTS

On or about August 31, 1991, Allemang purchased the used equipment in question, a forage harvester and corn head, from Kearney Center for $98,600, financing a portion of the purchase price with John Deere Company at 11.9 percent interest. Because he was retiring as a farmer, Allemang, sometime between February 5 and March 9, 1992, hired Wegener Auction Company to sell the equipment at auction on March 10. On that date, Kearney Center took possession of the equipment, which was then in good field-ready condition and which, in Allemang's opinion, had a value on said date of $85,000 to $100,000.

The loan agreement between Allemang and John Deere required Allemang to keep the equipment insured at all times, and Allemang had it insured for $85,000. However, after Kearney Center took possession, Allemang canceled the insur-

ance. On October 8, 1992, the district court, in granting Allemang a partial summary judgment, ruled that he could regain possession of the equipment only after he demonstrated proof of insurance. Allemang reinsured the equipment "[s]ometime in December of 1992," and the equipment "was delivered to" him on December 23, 1992.

Witness Ray Hunt is familiar with the type of equipment in question and has performed custom silage work since 1981 or 1982. Such work entails a contractor cutting somebody else's crops for silage and putting it in that customer's pit for a fee. According to Hunt, the corn silage season generally runs from the first week of September until the middle of October, depending on the weather, and in 1992, Hunt cut corn for silage from August 25 until October 15.

Hunt was of the view that the reasonable net rental value of the equipment between March 10 and December 23, 1992, for cutting crops for both "haylage" and silage was $80,000. The reasonable value of the equipment for cutting only corn for silage between August 25 and October 15, 1992, was $52,000. These amounts are based on the absolute optimum that the equipment could run per day: that is, continually for 20 hours, the remaining 4 hours being allocated for maintenance. Cutting hay requires the use of a hay head, and Hunt's opinion as to the rental value of the equipment includes consideration for rental cost for a hay head. Although Hunt spoke in terms of "rental value," his testimony deals rather with the value of the lost use of the equipment.

Allemang did not recall if he actually performed any custom harvesting work in 1992 and did not recall renting or hiring a forage harvester or corn head in 1992 to do any silage work. He had no contracts to do any custom silage work in 1992 and has never charged rent to anyone for using the equipment. Allemang admitted that he suffered no personal income loss as a result of not having the equipment in 1992 and has not used the equipment since it was returned.

The district court found that Kearney Center wrongfully took possession of the equipment on March 10, 1992, and had wrongfully retained it until December 23, a period of 288 days; that the equipment had a value of $92,500; that the interest rate

to be applied was 11.9 percent; and that Allemang had not suffered any special use damages. In so ruling, the district court noted that Allemang offered only evidence concerning the maximum potential use for the equipment without offering any supporting evidence that such use would have occurred.

## IV. ANALYSIS

### 1. Measure of Damages

In the first summarized assignment of error to the Court of Appeals, Allemang asserts he is entitled to damages based on the value of the special use of the equipment rather than the interest on the value of the equipment accumulated during the period of wrongful detention.

Neb. Rev. Stat. § 25-10,105 (Reissue 1995) provides that in a replevin action "when the property has been delivered to the plaintiff, where the jury shall find for the plaintiff, on an issue joined . . . they shall assess adequate damages to the plaintiff for the illegal detention of the property . . . ."

The commissioner writing in *Schrandt v. Young*, 62 Neb. 254, 86 N.W. 1085 (1901), observed that although in a replevin action the measure of damages ordinarily is the interest on the value of the property during the period it was wrongfully detained, where the use of the property is valuable and the value of the use exceeds the amount of interest on the value, interest often does not afford adequate compensation. Thus, according to *Schrandt*, the plaintiff may recover "(1) if there is no special value attaching to use of the property, interest; (2) if the value of use of the property exceeds the interest, then such value, without regard to whether the property is returned, but, in such case, no interest . . . ." *Id.* at 263, 86 N.W. at 1088. In other words, ordinarily, the plaintiff in a replevin action may recover the interest on the value of the property during the period it was wrongfully detained; however, where the value of the loss of use of the property during such period exceeds the amount of such interest, then, instead of interest, the plaintiff may recover the value of the loss of use of the property.

We have most recently reiterated the *Schrandt* rule in *Morfeld v. Bernstrauch*, 216 Neb. 234, 343 N.W.2d 880 (1984). The plaintiffs therein brought a replevin action against the

defendant towing service, which was found to have wrongfully detained the plaintiffs' automobile for 957 days. Quoting the test set forth in *Schrandt*, we noted that calculating damages would not be difficult, since the parties stipulated that the fair and reasonable rental value of the automobile at all times would be $10 per day. Thus, we upheld the trial court's award of $9,570, which was clearly based on the value of the plaintiffs' loss of use of the vehicle. Allemang correctly points out that there was no indication that the *Morfeld* plaintiffs were required to show that they would have driven the automobile had the defendant not wrongfully detained it, or that they had to prove that they rented a replacement automobile. But neither does it appear that those issues were in dispute. Thus, *Morfeld* does not stand, as Allemang urges, for the proposition that damages in a replevin action may be based on hypothetical lost profits.

Indeed, in *"L" Investments, Ltd. v. Lynch*, 212 Neb. 319, 327, 322 N.W.2d 651, 656 (1982), we wrote:

> "The basic principle of the law of damages is that such compensation in money shall be allowed for the loss sustained as will restore the loser to the same value of property status as he occupied just preceding the loss."
>
> . . . "[T]he principle underlying allowance of damages is to place the injured party in the same position, so far as money can do it, as he would have been had there been no injury or breach of duty, that is, to compensate him for the injury actually sustained . . . ."

While Allemang attempted to establish the use value of the equipment, he completely failed to show that he would have used it but for Kearney Center's wrongful detention. On the contrary, Allemang testified that he could not recall renting or hiring a forage harvester and corn head in 1992, that he had no contracts to do custom work in 1992, and that he never charged rent when others used his forage harvester and corn head. In fact, as he was retiring from farming, Allemang intended to sell the equipment at auction before the silage-cutting season even began and admitted that he sustained no personal income loss as a result of not having the equipment in 1992. Under that state of the record, the district court's finding that Allemang failed to prove special use damages cannot be said to be clearly wrong.

In a replevin action, a successful plaintiff "ought to recover 'all damages which he has actually sustained by reason of the unlawful detention of the property in controversy.' " *Schrandt v. Young*, 62 Neb. 254, 263, 86 N.W. 1085, 1088 (1901), quoting *Teel v. Miles*, 51 Neb. 542, 71 N.W. 296 (1897). Where special damages are not shown, damages for wrongful detention are limited to the extent of interest on the value of the property during the time it was wrongfully detained. *North American Acceptance Corporation v. Meeks*, 146 Neb. 546, 20 N.W.2d 504 (1945); *Stull v. Taylor*, 121 Neb. 200, 236 N.W. 442 (1931).

Accordingly, Allemang's recovery is limited to the extent of interest on the value of the property during the time it was wrongfully detained. Kearney Center's assertion on cross-appeal that there is no evidence to support the district court's valuation of the equipment at $92,500 overlooks that the figure falls within the range of Allemang's opinion as to the value at the time it was taken. See *Melcher v. Bank of Madison*, 248 Neb. 793, 539 N.W.2d 837 (1995) (verdict in conversion action within range of evidence adequately supported).

## 2. PERIOD OF DETENTION

In the second and final summarized assignment of error, Allemang contends that the Court of Appeals erred in reducing the period of wrongful detention as determined by the district court.

This issue is controlled by the rule that the rights of the parties in a replevin action are to be determined as of the time the replevin action was filed, and what takes place thereafter is immaterial in the consideration and determination of the case. *Barelmann v. Fox*, 239 Neb. 771, 478 N.W.2d 548 (1992).

In its cross-appeal, Kearney Center argues that the district court's award for interest damages should not have been based on a 288-day detention because the district court held on October 8, 1992, that Kearney Center could retain possession of the equipment until Allemang provided proof of insurance. Claiming that Allemang did not provide such proof of insurance until December 23, 1992, Kearney Center argues that the detention during the 76 days intervening between October 8 and

December 23 was not wrongful; rather, it was court authorized and approved, and thus lawful. We agree.

In *Schneider v. Daily*, 148 Neb. 413, 416, 27 N.W.2d 550, 552 (1947), we imposed upon the owner of personal property in a replevin action the duty "to mitigate his damage the same as any other litigant." The *Schneider* plaintiff received an order directing the sheriff to release, return, and restore the plaintiff's attached property. The evidence showed that the sheriff left the property where he had found it, on the plaintiff's neighbor's farm. The plaintiff claimed that the sheriff never released the property. We held that the property was released when the sheriff's deputy notified the plaintiff of the release and that the plaintiff could not claim damages merely because the plaintiff would not pick up and deliver the property to his own home. In like fashion, we held in *Olson v. Pedersen*, 194 Neb. 159, 231 N.W.2d 310 (1975), that a property owner's duty of mitigation included the duty to file legal action to secure return of the property he alleged was illegally detained by the defendants, noting that " 'the rules for awarding damages should be such as to discourage even persons against whom wrongs have been committed from passively suffering economic loss which could be averted by reasonable efforts . . . .' " *Id.* at 170, 231 N.W.2d at 317, quoting Charles T. McCormick, Handbook on the Law of Damages § 33 (1935).

Even if the district court wrongly imposed the insurance condition, because it ruled that Kearney Center could retain possession of the equipment until Allemang provided such proof, the district court improvidently assessed damages against Kearney Center for the period from the October 8, 1992, date of its order until the date Allemang finally provided such proof. If Allemang wished to claim that the district court was wrong in imposing the condition, his remedy was to assign error to such on his appeal to the Court of Appeals; that he did not do.

While the evidence suggests that Allemang obtained insurance some days prior to December 23, 1992, it was his burden under the district court's order to establish when he did so. Having failed to adduce more precise evidence on the matter, he cannot complain of the use of December 23, 1992, as such date.

## V. JUDGMENT

Accordingly, the judgment of the Court of Appeals is affirmed.

AFFIRMED.