SUSAN MULLER, PERSONAL REPRESENTATIVE OF THE
ESTATE OF TERRY LEE MULLER, DECEASED, APPELLEE AND
CROSS-APPELLANT, V. TRI-STATE INSURANCE COMPANY OF
MINNESOTA, APPELLANT AND CROSS-APPELLEE.

560 N.W.2d 130

Filed March 14, 1997.    No. S-95-128.

Jay L. Welch and Douglas E. Baker, of Welch, Wulff & Childers, for appellant.

Mark M. Sipple, of Sipple, Hansen, Emerson & Schumacher, for appellee.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, and GERRARD, JJ., and LUTHER, D.J.

Caporale, J.

## I. STATEMENT OF CASE

This is a declaratory judgment action brought to determine the rights of the plaintiff-appellee and cross-appellant, Susan Muller, the widow and personal representative of the estate of her late husband, Terry Lee Muller, pursuant to the underinsured motorist provisions of the "Business Auto Coverage Form Declarations," made a part of the "Country Commodities Distributor's Policy" of insurance issued by the defendant-appellant and cross-appellee, Tri-State Insurance Company of Minnesota, to said decedent's employer, Richland Grain Co., Inc. The district court sustained the widow's motion for summary judgment and declared that she is entitled to payment pursuant to the terms of the underinsured motorist coverage, notwithstanding that she was entitled as well to workers' compensation benefits under the separate policy of workers' compensation insurance Tri-State had also issued to Richland Grain. Tri-State then appealed to the Nebraska Court of Appeals, asserting that the district court erred in (1) not declaring that the widow is limited to the receipt of workers' compensation benefits, (2) not declaring that Tri-State is entitled to offset payments under its workers' compensation policy against any liability it has under the automobile policy, and (3) awarding the widow an attorney fee. The widow cross-appealed, asserting the district court erred in not awarding her the full limit of insurance available under the automobile policy. Under our authority to regulate the caseloads of the Court of Appeals and this court, we, on our own motion, removed the matter to our docket. We now affirm.

## II. SCOPE OF REVIEW

The issues present questions of law, in connection with which an appellate court reaches conclusions independent of the lower court's ruling. *Allemang v. Kearney Farm Ctr.*, 251 Neb. 68, 554 N.W.2d 785 (1996).

## III. FACTS

The decedent lost his life as the result of an April 13, 1991, automobile accident which arose out of and in the course of his employment with Richland Grain. As a consequence, Tri-State

has paid the widow, and continues to pay her, workers' compensation benefits, which it estimates have a total present value of $188,700.

The widow filed a tort action against the tort-feasors for the wrongful death of the decedent and won a judgment in the amount of $751,845.08. The tort-feasors' insurer paid the full amount of its $100,000 liability to the clerk of the district court, where the money remains.

The underinsured motorist coverage in question limits Tri-State's liability to $250,000 per person and provides, in relevant part, that "[a]ny amount payable for damages shall be reduced by all sums paid or payable under any workers' compensation, disability benefits or similar law." The district court held that the foregoing setoff provision was void and against public policy and awarded the widow a judgment of $150,000 against Tri-State.

## IV. ANALYSIS OF TRI-STATE'S APPEAL

### 1. EXCLUSIVENESS OF WORKERS' COMPENSATION REMEDY

In its first assigned error, Tri-State alleges that the district court erred in concluding that the exclusive remedy provision of the Nebraska Workers' Compensation Act, Neb. Rev. Stat. § 48-111 (Reissue 1993), does not apply. That statute reads, in relevant part:

> Such agreement or the election provided for in section 48-112 [which provides, so far as is relevant here, that every employer and every employee "is presumed to accept and come under" the act] shall be a surrender by the parties thereto of their rights to any other method, form, or amount of compensation or determination thereof than as provided in the . . . [a]ct, and an acceptance of all the provisions of such act, and shall bind the employee himself or herself, and for compensation for his or her death shall bind his or her legal representatives, his or her surviving spouse and next of kin, as well as the employer, and the legal representatives of a deceased employer . . . . For the purpose of this section, if the employer carries a policy of workers' compensation insurance, the term employer shall also include the insurer.

Tri-State argues that § 48-111, along with our decision in *Pettigrew v. Home Ins. Co.*, 191 Neb. 312, 214 N.W.2d 920 (1974), prevents the widow from recovering under the underinsured motorist provisions of its automobile policy. The plaintiff in *Pettigrew* suffered injuries in the course of his employment, received workers' compensation benefits, and then sued his employer's workers' compensation carrier, alleging that the carrier negligently performed its agreement to provide safety engineering inspections. We held that the carrier was immune from liability by virtue of § 48-111, writing that "[i]t is evident to us that the legislative intent in adopting the language quoted was to place the insurer in the same situation as the employer and to eliminate actions of this type." *Id.* at 315, 214 N.W.2d at 923.

Tri-State also calls our attention to *CNA Ins. Co. v. Colman*, 222 Conn. 769, 610 A.2d 1257 (1992); *Bouley v. Norwich*, 222 Conn. 744, 610 A.2d 1245 (1992); *Hackenberg v. Transp. Authority*, 526 Pa. 358, 586 A.2d 879 (1991); and *Lewis v. School Dist. of Philadelphia*, 517 Pa. 461, 538 A.2d 862 (1988), which in general held that workers' compensation is an employee's exclusive remedy against the employer and that an employee may thus not recover uninsured motorist benefits from the employer for a work-related automobile accident. However, other jurisdictions have held that recovery of workers' compensation benefits does not preclude recovery of uninsured motorist benefits. *William v. City of Newport News*, 240 Va. 425, 397 S.E.2d 813 (1990); *Christy v. City of Newark*, 102 N.J. 598, 510 A.2d 22 (1986).

Instructive as the holdings of other states may be, we have observed that "[c]olor-matching cases would serve no useful purpose herein where our problem is one of statutory construction and our [workers' compensation] statute is not identical to those involved in other jurisdictions." *Pettigrew*, 191 Neb. at 314, 214 N.W.2d at 922.

It is true that under § 48-111, an employee's election of workers' compensation benefits "shall be a surrender . . . of [his or her] rights to any other method, form, or amount of compensation" against the employer's workers' compensation insurance carrier. The fact is, however, that as Richland Grain's underinsured motorist carrier, Tri-State is not Richland Grain's

workers' compensation carrier. This factual difference makes the reasoning of *Pettigrew, supra,* inapplicable. It would be illogical to allow an employee whose employer contracted with two separate insurance carriers (one for workers' compensation coverage and another for underinsured motorist coverage) to collect under both policies, but disallow the employee whose employer contracted with only one insurer, as in the instant case, to recover under both. In short, § 48-111 protects Tri-State only in its role as the workers' compensation carrier, not in its role as Richland Grain's underinsured motorist carrier.

That determination brings us to a consideration of Tri-State's claim that

> [t]he result of the [district court's] decision in this case is to permit those workers who happen to be injured while driving a company car to recover significantly more benefits from the employer and its insurers than those workers who are injured somewhere else while on the job. That is a distinction without a substantial difference, discrimination without a rational basis.

Brief for appellant at 13. In support of that proposition, Tri-State quotes from *State ex rel. Douglas v. Marsh,* 207 Neb. 598, 608-09, 300 N.W.2d 181, 187 (1980):

> "It is competent for the Legislature to classify objects of legislation and if the classification is reasonable and not arbitrary, it is a legitimate exercise of legislative power. . . . *Classifications for the purpose of legislation must be real and not illusive; they cannot be based on distinctions without a substantial difference. . . .*"

(Emphasis in original.) Tri-State does not, however, tell us what legislation it is challenging. As Tri-State wants both classes to be treated equally, perhaps it is challenging the constitutionality of § 48-111. But even if the equal protection argument were to prove meritorious, Tri-State clearly lacks standing to argue the equal protection rights of an employee injured during the course of employment while driving a vehicle not owned by the employer. See *State ex rel. Bouc v. School Dist. of City of Lincoln,* 211 Neb. 731, 320 N.W.2d 472 (1982).

Accordingly, the district court did not err in concluding that the exclusive remedy provisions of § 48-111 do not apply in the instant case.

6

## 2. RIGHT TO SETOFF

In its second assignment of error, Tri-State asserts that the district court erred in concluding that it was not entitled to enforce the terms of the underinsured motorist provisions permitting it to reduce its liability by the value of benefits paid and payable to the widow under the workers' compensation act. The underinsured motorist policy provides, in relevant part, that "[a]ny amount payable for damages shall be reduced by all sums paid or payable under any workers' compensation, disability benefits or similar law." The district court held that this setoff provision was void and against public policy.

Tri-State correctly urges that the "parties to an insurance contract may contract for any lawful coverage, and the insurer may limit its liability and impose restrictions and conditions upon its obligation under the contract not inconsistent with public policy or statute." *Design Data Corp. v. Maryland Cas. Co.*, 243 Neb. 945, 955, 503 N.W.2d 552, 559 (1993). We are also mindful that courts are to be cautious in holding contracts void on the ground of public policy, and before they do so, prejudice to the public interest should clearly appear. *Mueller v. Union Pacific Railroad*, 220 Neb. 742, 371 N.W.2d 732 (1985).

> " ' "It is not the province of courts to emasculate the liberty of contract by enabling parties to escape their contractual obligations on the pretext of public policy unless the preservation of the public welfare imperatively so demands. * * * '[T]he power of courts to declare a contract void for being in contravention of sound public policy is a very delicate and undefined power, and, like the power to declare a statute unconstitutional, should be exercised only in cases free from doubt.' . . ." ' "

*Southern Neb. Rural P.P. Dist. v. Nebraska Electric*, 249 Neb. 913, 918, 546 N.W.2d 315, 319 (1996). See, also, *Bedrosky v. Hiner*, 230 Neb. 200, 430 N.W.2d 535 (1988); *Mayer v. Howard*, 220 Neb. 328, 370 N.W.2d 93 (1985); *OB-GYN v. Blue Cross*, 219 Neb. 199, 361 N.W.2d 550 (1985); *Occidental Sav. & Loan Assn. v. Venco Partnership*, 206 Neb. 469, 293 N.W.2d 843 (1980).

Nonetheless, there are circumstances under which public policy overcomes contractual provisions. Such an example is

found in *Stephens v. Allied Mut. Ins. Co.*, 182 Neb. 562, 156 N.W.2d 133 (1968). We therein held that a setoff provision for medical payments coverage in an uninsured motorist coverage policy was void and against public policy, writing:

> The general rule is that an insurer may not limit its liability under uninsured motorist coverage by setoffs or limitations through "other insurance," excess insurance, or medical payment reduction clauses, and this is true even when the setoff for the reduction is claimed with respect to a separate, independent policy of insurance (workmen's compensation) or other insured motorist coverage. And this is true because the insured is entitled to recover the same amount he would have recovered if the offending motorist had maintained liability insurance.

*Id.* at 571, 156 N.W.2d at 139.

In urging that the foregoing applies only to uninsured motorist coverage and not to underinsured motorist coverage, Tri-State calls our attention to *Waylett v. United Servs. Auto. Assn.*, 224 Neb. 741, 743, 401 N.W.2d 160, 162 (1987), in which we held that the public policy outlined in *Stephens* did not prevent an insurer providing underinsured motorist coverage from enforcing setoff language reading that " 'the limit of liability shall be *reduced* by *all sums* paid because of the bodily injury by or on behalf of *persons or organizations* who *may be* legally responsible.' " (Emphasis in original.) In so holding, we specifically noted that at the time the underinsured coverage in question was issued, there existed no underinsured motorist statute. It is true that in dicta we also observed that the later-enacted underinsured motorist statute contained provisions substantially different from those contained in the uninsured motorist statute considered in *Stephens*. Nonetheless, the fact is that as there then existed no underinsured motorist statute, there existed no impediment to enforcing the language of the policy.

That situation has changed. By the time the underinsured motorist coverage in question was issued, March 9, 1991, our Legislature had enacted the Underinsured Motorist Insurance Coverage Act, Neb. Rev. Stat. §§ 60-571 through 60-582 (Reissue 1988), which required that the automobile liability carrier offer underinsured motorist coverage which the insured

was free to reject. § 60-577. Such was the situation with respect to uninsured motorist coverage at the time *Stephens* was decided, Neb. Rev. Stat. § 60-509.01 (Reissue 1968), wherein we observed:

> A provision, drawn by the insurer to comply with the statutory requirement of uninsured motorist coverage, must be construed in light of the purpose and policy of the statute. Such a provision, drawn in pursuance of a statutorily declared public policy, is enacted for the benefit of injured persons traveling on the public highways. Its purpose is to give the same protection to the person injured by an uninsured motorist as he would have had if he had been injured in an accident caused by an automobile covered by a standard liability policy. Such provisions are to be liberally construed to accomplish such purpose.

*Stephens*, 182 Neb. at 565-66, 156 N.W.2d at 136-37.

As the purpose of both coverages is to provide a means to make the victims of less than adequately insured motorists whole, or as nearly so as reasonably possible, the same reasoning and underlying policy which controlled *Stephens* apply to underinsured motorist coverage. Indeed, that such was the intention of the Legislature is established by the fact that in the process of adopting the Underinsured Motorist Insurance Coverage Act, the Legislature struck language which read:

> Any damages payable under the terms of underinsured motorist coverage to or for any person shall be reduced by (1) the amount paid and the present value of all amounts payable under any worker's compensation or other similar law exclusive of nonoccupational disability benefits, (2) the amounts paid or payable under any valid and collectible automobile medical payments insurance or any similar automobile personal injury protection insurance payable without regard to fault, and (3) any amount paid to or for the insured by or for any person or organization who is or may be held legally liable for bodily injury, sickness, disease, or death of the insured.

Banking, Commerce, and Insurance Committee Hearing, L.B. 573, 89th Leg., 1st Sess. 5 (Jan. 22, 1985).

As a consequence, the district court did not err in holding that the setoff provision in question is void as being against public policy.

### 3. ATTORNEY FEE

Finally, in the third assignment of error, Tri-State claims the district court erred in awarding the widow a $12,000 attorney fee.

However, that claim is based on the premise that the widow is not entitled to payment pursuant to the underinsured provisions of Tri-State's automobile policy. Such not being the case, the claim fails. Neb. Rev. Stat. § 44-359 (Reissue 1993) provides, in relevant part:

> In all cases when the beneficiary or other person entitled thereto brings an action upon any type of insurance policy, except workers' compensation insurance . . . against any company, person, or association doing business in this state, the court, upon rendering judgment against such company, person, or association, shall allow the plaintiff a reasonable sum as an attorney's fee in addition to the amount of his or her recovery, to be taxed as part of the costs.

We have held that the amount of an attorney fee awarded under § 44-359 is addressed to the discretion of the trial court, whose ruling will not be disturbed on appeal in the absence of an abuse of discretion. *Adams Bank & Trust v. Empire Fire & Marine Ins. Co.*, 244 Neb. 262, 506 N.W.2d 52 (1993). We have also held that in determining the value of legal services rendered by an attorney, it is proper to consider the amount involved, the nature of the litigation, the time and labor required, the novelty and difficulty of the questions raised, the skill required to properly conduct the case, the responsibility assumed, the care and diligence exhibited, the result of the suit, the character and standing of the attorney, and the customary charges of the bar for similar services. *National Am. Ins. Co. v. Continental Western Ins. Co.*, 243 Neb. 766, 502 N.W.2d 817 (1993).

It is therefore clear that the widow was entitled to an attorney fee and that applying the *National Am. Ins. Co.* standards, the

amount of the fee awarded cannot be said to constitute an abuse of discretion.

### V. ANALYSIS OF WIDOW'S CROSS-APPEAL

In her cross-appeal, the widow alleges that the district court erred in failing to award her the total $250,000 limit of the underinsured motorist provision.

At the time in question, § 60-578 provided, in relevant part:

(1) The maximum liability of the insurer under the underinsured motorist coverage shall be the lesser of:

(a) The difference between the limit of underinsured motorist coverage and the amount paid to the insured by or for any person or organization which may be held legally liable for the bodily injury, sickness, disease, or death . . . .
. . . .

(2) In no event shall the liability of the insurer under such coverage be more than the limits of the underinsured motorist coverage provided.

The district court thus concluded that "the liability of the defendant in this case is the difference between the limit of underinsured motorist coverage ($250,000.00) and the amount paid to the plaintiff on behalf of the tortfeasor ($100,000.00), which liability, therefore, exists in the amount of $150,000.00."

The widow argues that the $100,000 paid in satisfaction of the judgment in her favor into the repository of the Colfax County District Court has not been paid "to the insured," as required by statute. She therefore urges that there should be no reduction. That argument has no merit, for the $100,000 paid to the court clerk accrues to the widow's benefit, subject to whatever subrogation rights Tri-State may have. Neb. Rev. Stat. § 48-118 (Reissue 1993) (stating when third person liable to employee or dependents for injury or death, employer subrogated to right of employee or dependents against such third person).

Tri-State, on the other hand, argues that as the widow has been paid $100,000 by the tort-feasors' insurer and "will receive workers' compensation benefits . . . valued at $180,000.00," supplemental brief for appellant at 3, she has been paid $280,000. It then concludes that it has no liability under § 60-578.

But Tri-State's position overlooks that workers' compensation benefits are not amounts "paid to the insured by or for any person or organization which may be held legally liable for the bodily injury, sickness, disease, or death." In the present instance, this language applies only to the amount paid by the tort-feasors' insurer. It therefore follows that the district court did not err in awarding the widow $150,000.

## VI. JUDGMENT

For the foregoing reasons, the judgment of the district court is, as first noted in part I, affirmed.

AFFIRMED.

WRIGHT, J., concurring.

I concur only because the law as it presently exists requires this result. Normally, subrogation of workers' compensation benefits is permitted so that the insurer can recover its compensation payments to the extent that such payments have also been received by the victim from the third-party tort-feasor. The result in this case is that the more the tort-feasor pays, the less the widow, who has never been fully compensated, receives.

Under the facts of this case, the widow obtained a judgment against the tort-feasor in the amount of $750,000. The tort-feasor's insurer paid $100,000, which the widow receives. This $100,000 is deducted from the $250,000 underinsurance benefit, and the widow is paid $150,000 from the deceased's employer's underinsured coverage. However, the law also permits the workers' compensation carrier (Tri-State) to subrogate the $100,000 received from the tort-feasor against the workers' compensation payments. The widow nets $250,000 in underinsured benefits and $80,000 in workers' compensation benefits, for a total of $330,000.

Had the tort-feasor paid $10,000, the widow would still receive $250,000 in underinsured benefits, but the workers' compensation carrier could subrogate only the $10,000 from the tort-feasor. The result is that the widow would receive $90,000 more in workers' compensation benefits, or a total of $420,000 as compensation for the loss.

If the victim has been fully compensated by other sources, the workers' compensation insurer should get its money back

because the workers' compensation payments would amount to a double recovery. Here, subrogation takes away benefits from the family of a victim that has not been fully compensated for its loss.

WHITE, C.J., joins in this concurrence.