WILLIS LUEDKE, APPELLANT, V.
UNITED FIRE & CASUALTY COMPANY, APPELLEE.
561 N.W.2d 206

Filed March 28, 1997.   No. S-95-786.

Alan L. Plessman, of Plessman Law Offices, for appellant.

Randall L. Goyette and Stephanie F. Stacy, of Baylor, Evnen, Curtiss, Grimit & Witt, for appellee.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, and GERRARD, JJ., and LIVINGSTON, D.J.

WRIGHT, J.

This is a dispute between United Fire & Casualty Company (United) and its insured, Willis Luedke, over the amount of

underinsured motorist benefits to which Luedke is entitled under his automobile insurance policy. United contends that the law and the express terms of the policy require that the underinsured motorist benefits be calculated by taking the difference between the policy limits and all amounts paid as compensation for Luedke's injuries by both the workers' compensation carrier and the tort-feasor. Luedke asserts that his benefits should be calculated by taking the difference between the policy limits and those amounts paid to and actually retained by him.

## SCOPE OF REVIEW

The issue in this case presents a question of law, in connection with which an appellate court reaches a conclusion independent of the lower court's ruling. *Muller v. Tri-State Ins. Co., ante* p. 1, 560 N.W.2d 130 (1997).

## FACTS

On July 18, 1988, Luedke was a passenger in an automobile which was traveling southbound on a county road in Seward County, Nebraska. Aleen Gleason was operating her automobile in a northbound direction at the same time and place. Gleason's automobile made a left turn in front of the automobile in which Luedke was a passenger, and a collision occurred which resulted in injuries to Luedke.

At the time of the accident, Luedke was acting in the course and scope of his employment with Garst Seed Company. Luedke sustained medical and hospital expenses. He was temporarily totally disabled and permanently partially disabled, and he lost income from work. In connection with these injuries, the workers' compensation carrier for Garst Seed Company paid a total of $38,711.77 in workers' compensation benefits.

Luedke commenced an action in the district court for Seward County against Gleason, seeking compensation for his injuries and damages. On May 5, 1993, a judgment was entered by agreement in favor of Luedke and against Gleason in the amount of $150,000. At the time of the judgment, Gleason's insurance carrier, Allied Insurance Company (Allied), had received notice from Garst Seed Company's workers' compensation carrier of its workers' compensation subrogation lien for

the sums it had paid to or on behalf of Luedke. Allied paid to Luedke and Garst Seed Company $25,000, the limits of Gleason's liability insurance coverage, in partial satisfaction of the judgment entered against Gleason. Since Garst Seed Company's lien exceeded the $25,000 payment, Garst Seed Company received the entire payment, leaving an outstanding lien of $13,711.77. The balance of the judgment against Gleason, $125,000, remained outstanding at the time of trial.

United and its predecessor disputed what amount was due Luedke and have not paid Luedke any sum under his automobile insurance policy for the claims arising from the accident with Gleason. At the time of the accident, Luedke carried underinsured motorist insurance through United in the amount of $100,000 per person. The relevant policy provision for the underinsured motorist coverage provided: "Any amounts otherwise payable for damages under this coverage shall be reduced by all sums paid or payable because of the 'bodily injury' under any of the following or similar law: 1. Workers' compensation law; or 2. Disability benefits law."

On June 22, 1993, Luedke, by and through his attorney, made a written offer of settlement upon United by certified mail for the amount of $61,288.23. Such offer was not accepted. On December 8, United, by and through its attorney, made a written offer to Luedke to allow judgment to be taken in the amount of $36,300, which offer was rejected by Luedke. Luedke then commenced this action against United to collect underinsured motorist benefits due under the policy issued by United.

The district court found that the plain and ordinary meaning of Neb. Rev. Stat. § 60-578 (Reissue 1988), as well as United's policy, required that the coverage limits of $100,000 be reduced by the $38,711.77 paid by Luedke's employer's workers' compensation carrier as well as the $25,000 paid on behalf of Gleason's liability insurance carrier, leaving due and owing to Luedke from United the sum of $36,288.23. The court found that since United rejected the offer made by Luedke and the amount of the judgment did not exceed Luedke's offer of settlement, no prejudgment interest would be awarded. The court further found that since Luedke had failed to obtain a judgment for more than the amount offered by United, Luedke should pay

United's costs from and after the December 8, 1993, offer. Lastly, the court found that since Luedke failed to obtain a judgment for more than the amount of his settlement offer, he could not recover any attorney fees under Neb. Rev. Stat. § 44-359 (Reissue 1993). The court entered judgment in favor of Luedke and against United in the sum of $36,288.23 plus costs up to and through December 8, 1993. Costs after such date were taxed to Luedke.

Luedke appealed, and under our authority to regulate the caseloads of the Nebraska Court of Appeals and this court, we removed the matter to our docket.

## ASSIGNMENTS OF ERROR

Luedke makes two assignments of error: (1) The trial court's order is contrary to law, and (2) the trial court's order is unsupported by the evidence.

## ANALYSIS

This case presents an issue as to the application of the setoff provision in Luedke's underinsured motorist coverage. The interpretation and construction of an insurance contract ordinarily involve questions of law in connection with which an appellate court has an obligation to reach conclusions independent of the determinations made by the court below. *Katskee v. Blue Cross/Blue Shield*, 245 Neb. 808, 515 N.W.2d 645 (1994).

The provision in question states in relevant part: "Any amounts otherwise payable for damages under this coverage shall be reduced by all sums paid or payable because of the 'bodily injury' under any of the following or similar law: 1. Workers' compensation law; or 2. Disability benefits law." Gleason's insurance carrier paid $25,000 in partial satisfaction of the $150,000 judgment against her, and Luedke received $38,711.77 from his employer's workers' compensation carrier.

Luedke contends that it was error for the district court to allow a setoff of his underinsured motorist benefits in the amount of both Gleason's insurance carrier's payment and his workers' compensation benefits when the workers' compensation carrier had already subrogated against the $25,000 paid on behalf of Gleason. Luedke claims that under the plain and ordi-

nary meaning of the policy or, if ambiguous, its reasonable interpretation, United's coverage should first be reduced by the $25,000 paid on behalf of Gleason and should then be reduced by only $13,711.77, the amount of the workers' compensation carrier's outstanding lien. Because we have recently determined that a similar setoff provision was void, we need not determine whether the setoff provision in this case should be construed to allow a setoff of the entire $38,711.77 or of only $13,711.77.

In *Muller v. Tri-State Ins. Co., ante* p. 1, 6, 560 N.W.2d 130, 134 (1997), we held that an underinsured motorist provision in an automobile insurance policy which stated that " '[a]ny amount payable for damages shall be reduced by all sums paid or payable under any workers' compensation, disability benefits or similar law' " was void as against public policy. In that case, we noted that the policy was issued after the Underinsured Motorist Insurance Coverage Act (Act), Neb. Rev. Stat. §§ 60-571 through 60-582 (Reissue 1988), was enacted, which required that an automobile liability carrier offer underinsured motorist coverage to its insured. As a result, the underinsured motorist coverage was necessarily drawn by the insurer to comply with statutory requirements, and it was construed in light of the purpose and policy of the Act. See *Stephens v. Allied Mut. Ins. Co.*, 182 Neb. 562, 156 N.W.2d 133 (1968).

In *Muller*, we determined that the purpose and policy of the Act is to provide a means to make the victims of less than adequately insured motorists as nearly whole as reasonably possible. We noted that although the Legislature retained a provision allowing the underinsured motorist insurance carrier to set off against payments made by the tort-feasor, which is a person or organization which may be held "legally liable," see § 60-578, the Legislature had struck language which would have allowed reduction by amounts paid under workers' compensation or other similar law. Therefore, an underinsured motorist coverage provision drawn pursuant to the Act which allows such a reduction is void as against public policy.

Luedke's policy of insurance was issued on February 14, 1988. The Act became operative on January 1, 1987. See 1986 Neb. Laws, L.B. 573. Thus, as in *Muller*, Luedke's policy was necessarily drawn by his insurer to comply with the statutory

requirements of the Act and must be construed in light of the purpose and policy of the Act.

By agreement, Luedke obtained a judgment against Gleason in the amount of $150,000. Only $25,000 was paid on behalf of Gleason. The $25,000 payment was not retained by Luedke, but, rather, went directly by right of subrogation to Garst Seed Company's workers' compensation carrier, which had paid Luedke $38,711.77 in benefits. Under such circumstances, to allow United to reduce amounts otherwise payable to Luedke by amounts paid under workers' compensation would defeat the intended purpose of underinsured motorist insurance, which is to make the victims of less than adequately insured motorists as nearly whole as reasonably possible. As already determined in *Muller*, such a provision is void as being against public policy.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is reversed, and the cause is remanded with directions that judgment be entered for Luedke in the amount of $75,000, which represents the amount of his underinsured motorist coverage through United ($100,000) reduced by the amount paid on behalf of Gleason ($25,000). The court is also directed to award prejudgment interest as provided for in Neb. Rev. Stat. § 45-103.02 (Reissue 1993) and attorney fees as provided for in § 44-359.

REVERSED AND REMANDED WITH DIRECTIONS.